WILLIAM P. HARNED, Respondent, v. THE MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, December 5, 1892.

1. **Railroads:** KILLING STOCK: EVIDENCE OF COLLISION: JURY QUESTION. If the jury can, with reasonable certainty, infer from the surrounding circumstances that the cattle in question were crippled by being struck by defendant's engines, the question will be submitted to them, and their verdict will not be disturbed.

2. **Common Carriers**: NOTICE OF INJURY TO LIVE STOCK: COMPLIANCE AND WAIVER. A stipulation in a contract of affreightment, that notice for loss must be made at the time the goods are delivered, will not protect the carrier where the claim is made in a reasonable time after the loss is ascertained; and where a calf was shipped under a contract requiring service of notice of loss within one day after delivery, and the injuries sustained were such as to take time to ascertain their nature and extent, and when ascertained notice was given and reparation demanded, the compliance was sufficient, and besides, in this case, such compliance was waived by its agent admitting the possession of the notice and promising to settle the claim on its merits.

3. ————: PAROL EVIDENCE: CONTRACT OF AFFREIGHTMENT. A contract of affreightment provided that in case of total loss of any of the stock shipped the actual cash value at the time and place of shipment, but in no case to exceed $100 per head, should be taken and deemed full compensation. *Held*, the provision did not fix the actual cash value of the stock, but only limited the compensation, and parol evidence was admissible to show that the shipper had agreed with carrier's agent at the time of shipping at $10 per head.

*Appeal from the Cooper Circuit Court.*—HON. E. L. EDWARDS, Judge.

AFFIRMED *(in part)*; REVERSED AND REMANDED *(in part)*.

*H. S. Priest* and *W. S Shirk*, for appellant.

(1) The demurrer to the first count should have been sustained. There was not sufficient evidence that the cow was struck by the defendant's locomotive, or train of cars. *O'Donnell v. Railroad*, 7 Mo. App. 190; *Gilbert v. Railroad*, 23 Mo. App. 65; *Lindsay v. Railroad*, 36 Mo. App. 51. (2) There was no evidence whatever, from which it could be inferred with reasonable certainty, that the cow mentioned in the second count had been struck by the engine or cars. *Taylor v. Fox*, 16 Mo. App. 527; *Lindsay v. Railroad, supra; Gilbert v. Railroad, supra.* (3) No objection was made against the requirement in the contract of shipment, requiring notice in writing for damage to be served within one day after the arrival of the stock at its destination, and providing that such notice should

not be waived, only in writing, and its validity is conceded. This being so, it was error to admit in evidence the letter from Tustin, of July 1, 1891, as evidence of a waiver of this notice. It was not intended as a waiver, nor does it waive the notice in terms. It was not necessary to say: "I will investigate the merits of your claim, but I will not waive your failure to give notice." This requirement in the shipping contract was meant to do away with waivers by inference or implication. Furthermore, it is not disclosed by the terms of the letter, nor was it attempted to be shown otherwise, that at the time the letter was written Mr. Tustin had any notice or knowledge that Harned had not given the required notice to the agent at Kansas City, or to some other agent or officer. *Dyas v. Hanson*, 14 Mo. App. 363, 375, and authorities cited; *Crouch v. Railroad*, 22 Mo. App. 315. (4) It was error to refuse to allow defendant to prove by the witness Hayden what valuation had been placed upon the calf at the time of its shipment. This was not an attempt to vary or contradict the terms of a written contract. The stipulation in the contract was valid and binding. Lawson on Contracts of Carriers, sec. 122; Hutchinson on Carriers, sec. 249; *Rice v. Railroad*, 63 Mo. 313; *Harvey v. Railroad*, 74 Mo. 358. And the evidence did not tend to vary or contradict the written contract. *Lumber Co. v. Warren*, 93 Mo. 374; *Adams v. Brewster*, 26 N. E. Rep. 10, 26; *Ins. Co. v. Kinneard*, 35 Ill. App. 105.

*John R. Walker* and *Edwin Silver*, for respondent.

(1) The evidence under the first count is sufficient. The evidence under the second count was sufficient to authorize the court in submitting the case to the jury. *McBride v. Railroad*, 20 Mo. App. 216;

*Miller v. Railroad*, 47 Mo. App. 630; *Gee v. Railroad*, 80 Mo. 283; *Lepp v. Railroad*, 87 Mo. 139; *Mayfield v. Railroad*, 91 Mo. 296. The cases of *Gilbert v. Railroad*, 23 Mo. App. 65, and *Lindsay v. Railroad*, 36 Mo. App. 51, have no application to the case at bar. (2) The injury to the bull was not fully developed and apparent until he reached plaintiff's farm, and it would have been impossible for him to have given the notice at Kansas City. "The object of such a condition is to protect the company from false and fictitious claims, by having the cattle inspected before they are removed or mixed with other cattle." Lawson on Contracts of Carriers, sec. 122; Wheeler's Law of Modern Carriers, 126; *Rice v. Railroad*, 63 Mo. 314, 321; *La Force v. Ins. Co.*, 43 Mo. App. 518. (3) There was a waiver of the notice required. J. S. Tustin, the general claim agent of the defendant, in his letter of July 1, 1891, to plaintiff, says, "Your claim which you sent to me is now undergoing investigation, and as soon as a conclusion has been reached, you will be duly advised." Hutchinson on Carriers [2 Ed.] sec. 259; *Rice v. Railroad*, 63 Mo. 314, 321; *Oxley v. Railroad*, 66 Mo. 629, 633; *Hess v. Railroad*, 40 Mo. App. 202; *La Force v. Ins. Co.*, 43 Mo. App. 518; Wheeler on Carriers, pp. 128-9. (4) The court did not err in excluding the evidence offered to show that a valuation of $10 per head was agreed on by plaintiff and defendant's agent. *Railroad v. Henlein*, 52 Ala. 606; Lawson on Contracts of Carriers, sec. 122. The proof offered attempted to contradict the written contract. Hutchinson on Carriers [2 Ed.] secs. 126, 243.

GILL, J.—Plaintiff Harned owned a herd of thoroughbred cattle which in May, 1891, he kept in a pasture near Bunceton, Missouri, and on the line of the defendant's railroad. The road ran through this

pasture and was unfenced. In the first three counts in plaintiff's petition he seeks to recover the double damages allowed by statute for the killing or injuring some of these cattle. The first count alleges that the defendant on the first day of May, 1891, with its cars and engines struck and injured a certain thoroughbred cow, and damaged her to the amount of $200, and prays judgment for double damages, to-wit, $400. The second count charges that the defendant by its cars and engines on the third day of May, 1891, struck and crippled another cow, and damaged her to the extent of $50, and prays judgment for double the amount, to-wit, $100. The third count charges that on the eighth day of May, 1891, the defendant by its cars and engines ran against and struck three cows, the property of the plaintiff, killing one of said cows of the value of $100, and crippling another of said cows of the value of $100, rendering her entirely worthless, which said cow was then and there delivered by plaintiff to and accepted by defendant, and has ever since been in the possession of the defendant; and also injured another cow, a thoroughbred, and damaging the said cow in the sum of $200, and prays judgment for $400 double damages. The fourth count is for the alleged negligent manner in which, on May 11, 1891, defendant transported a certain bull calf which was shipped by the plaintiff over defendant's road from Bunceton to Kansas City, whereby the animal was seriously injured, and for which plaintiff asked damages in the sum of $75. The cause was tried by jury, and a verdict for plaintiff rendered on each count; $170 on the first, $25 on the second, $350 on the third and $50 on the fourth count. Whereupon a judgment was entered doubling the damages found on the first three counts, and allowing single damages on the

fourth count. From this judgment defendant has appealed.

I. As to the counts for damages for running the engines and cars against and over plaintiff's cattle, killing some and crippling others, little need be said. The failure by defendant to fence its tracks where they passed through plaintiff's pasture is admitted, and that the cattle were injured or killed as claimed in the petition is also well established. · Counsel for defendant, however, has insisted that there was no evidence to justify the jury in finding that the cows mentioned in the first and second counts were injured by being struck by defendant's locomotive or train of cars. We have examined the evidence in that behalf with care, and find ample to sustain the jury in such finding. It is true that there was no eye witness to the collisions mentioned in these two counts yet the circumstances tend strongly to sustain the charges made, that the cows were run onto and over by defendant's trains. Indeed, it would be difficult, under the evidence adduced, to come to any other conclusion. If the jury could with reasonable certainty infer from the surrounding circumstances that the cattle were so crippled and injured, then this court is not authorized in disturbing the verdict. *Gee v. Railroad,* 80 Mo. 283; *Mayfield v. Railroad,* 91 Mo. 296; *McBride v. Railroad,* 20 Mo. App. 216. So then we discover no substantial objection to this judgment as regards the first three counts.

II. The fourth count as already said is for damages done to plaintiff's bull calf in carrying it on defendant's road from Bunceton. to Kansas City, May 11, 1891. The language of the sixth clause in the shipping contract is that Harned as a condition precedent to his right to damages "will give notice in writing of his claim, * * * before said stock is removed from the point of shipment, or from the place of destination,

and before such stock is mingled with other stock, within one day after the delivery of such stock at its point of destination, and before the same shall have been removed, slaughtered or intermingled with other stock, to the end that such claim may be fully and fairly investigated," etc.

The evidence tends to prove that the cars in which this animal and two others were being transported were so roughly and carelessly handled at Myrick station on the way to Kansas City that the young bull was so bruised and wounded that plaintiff was unable to sell him in the Kansas City market; that he, the plaintiff, was compelled to and did reship the calf back to his home in Cooper county, where the animal was kept for about three months and then sold for less than his original value, and that such depreciation was caused by said injuries. To defeat this claim defendant's main reliance is upon the provision of the shipping contract, above quoted from, stipulating that notice of the claim be served within one day after the delivery of such stock at its point of destination, and that in default thereof no recovery shall be had for such damage. It is claimed that no such notice of demand was served within the prescribed time, and that, therefore, the action was barred. Such conditions or limitations on the liability of common carriers, relating to the time and manner of giving notice of damages claimed, are, when reasonable and just, very generally enforced by the courts. Lawson on Carriers, sec. 120, *et seq.* The reasons therefor are particularly applicable in shipments of stock. Here the manifest object is to permit the carrier to investigate the facts while the occurrence is recent and the stock at hand and subject to ready inspection, so that the carrier may protect itself from fictitious or unfounded claims.

Hutchinson on Carriers, sec. 259; *Rice v. Railroad*, 63 Mo. 314.

But as said in this case last cited, "while upon grounds like these such special agreements are valid and binding, when they are reasonable, they should be reasonably and justly construed in their application to each case as it arises, in determining the question whether the required notice, both as to form and time, has been substantially complied with, * * * or whether compliance as regards time or form has been waived." It is further said that "a stipulation that a claim for loss must be made at the time the goods are delivered will not protect the carrier where the claim is made in a reasonable time after the loss is ascertained." Lawson on Carriers, sec. 121.

Now from the reading of the testimony in this case it may be well claimed that the plaintiff gave every notice of his claim that ought reasonably to be expected. It is true that he did not serve the notice of his claim within the twenty-four hours of the arrival of his bull at Kansas City, but at that time he could not, as he was unable to state his damages or the extent thereof, if any. When the animal was landed at the Kansas City stock yards, plaintiff saw that he had been bruised, but it was days or weeks after before he was aware of the extent of the injuries. He might have believed, and did doubtless consider, the injuries merely external and such as the animal might shortly recover from. But after reshipping the bull to Bunceton and caring for him for days and weeks maybe, the injuries were found of a serious and permanent nature, and it was then, as the evidence tends to prove, the plaintiff made demand for reparation. We do not think then that the circumstances of the case called for the bar of plaintiff's action, because he did not give the notice of his demand within the twenty-four hours after the

stock arrived at its destination. And yet more than this, it stands admitted that defendant's general claim agent did, within a few weeks, have written notice of plaintiff's claim, and made answer that the same was then being investigated, and that it would be settled on its merits. From this and the other facts in evidence, the jury were authorized to find that defendant waived the immediate notice stipulated in the contract, and the court's instruction in that regard was entirely proper. *Rice v. Railroad, supra.*

III. On the trial, and in relation to the matter complained of in the fourth count, defendant offered to prove that when plaintiff shipped the bull calf he agreed with the defendant's agent on the value of the calves, and fixed the same at $10 per head. This tender of evidence was objected to by plaintiff's counsel on the alleged ground that the written contract of ship-ment fixed the value, and, hence, this parol evidence of what occurred at the time could not be used to contradict the writing. The trial court adopted the view thus urged by plaintiff's counsel, sustained the objection and excluded the proffered testimony. This ruling is now complained of, and as we think rightly. From the evidence given by defendant's agent it would seem that the amount of freight charges for carrying the bull calf would be controlled by the price or value fixed on the article shipped, and he was proceeding to testify that, in getting at the value of the bull, he applied to plaintiff, who declared $10 as the value of the animal. Now the following is the clause of the shipping contract said to be varied or contradicted by this oral testimony offered and rejected: "The said second party further agrees for the consideration aforesaid that in case of total loss of any of his said stock from any cause for which the said first party will be liable, to pay for the same the actual cash value at the

time and place of shipment, but in no case to exceed $100 per head shall be taken and deemed as a full compensation therefor, and in case of injury or partial loss the amount or damage claimed shall not exceed the same proportion." It seems clear that this proposed evidence tended in no way to contradict or vary the terms of this contract. The clause quoted does not pretend to fix the actual cash value of the stock shipped, but only to limit it not to "*exceed* $100 per head." The *actual cash value* there mentioned was left open, only limited by the words, not to "exceed $100 per head." Any statement or agreement by the plaintiff then outside the written contract was clearly admissible to prove what was the actual cash value of the injured animal. This ruling then of the trial court was error, and as we think too a harmful error. We cannot undertake to say as to what effect it may have had on the jury in determining the issues contained in the fourth count.

The judgment herein will then be affirmed as to the first, second and third counts of the petition, but reversed as to the fourth count, and remanded for a new trial on that count only. All concur.