JAMES McGEE, Respondent, v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, May 17, 1897.

Common Carriers: CONSTRUCTION OF CONTRACT: DEMURRAGE: JURY QUESTION. A bill of lading guaranteed that the rate of demurrage should not exceed $2. *Held*, that this fixed a maximum charge and whether it applied to demurrage at the place of shipment or at the place of consignment, all that could be claimed for it would be a reasonable amount for unreasonable delay which was a question for the jury.

*Appeal from the Jackson Circuit Court.*—HON. E. L. SCARRITT, Judge.

AFFIRMED.

*M. A. Low* and *McDougal & Sebree* for appellant.

(1) The bills of lading executed at the time the loading of the cars was in progress, were the contracts under which the shipments were made, and are binding upon both parties. *O'Brien v. Kinney*, 74 Mo. 125; *Patterson v. R. R.*, 56 Mo. App. 657; *R. R. v. Cleary*, 77 Mo. 634; *Leonard v. R. R.*, 54 Mo. App. 293; *Snyder v. Express Co.*, 63 Mo. 376; *R. R. v. Harwell*, 48 Am. and Eng. R. R. Cases (Ala.), 358; 2 Am. and Eng. Ency. of Law, 228 and 229. (2) The fact that plaintiff inquired of defendant by letter what the rate was, and was answered five cents per hundred pounds, did not make a contract. These were merely preliminary negotiations which resulted in the execution of the bills of lading. But even if it did, it related

only to the rate of freight, and had nothing to do with the demurrage charges. Furthermore, the execution of the bills of lading superseded all prior negotiations, and were the only contracts affecting the shipment. See authorities cited above. (3) The right of a railroad company to charge demurrage and enforce its lien for same can not now be doubted. This is so, even where there is no agreement for it. *Miller v. R'y*, 88 Ga. 563; s. c., 15 S. E. Rep. 316; 4 Elliot on Railroads, secs. 1567, 1568, and cases cited. *Wagon Co. v. R. R.*, 32 S. W. Rep. 595. And where there is a stipulated demurrage charge in the contract of shipment, as in this case, it is conclusive on the parties, in the absence of fraud or mistake. In this case there is no charge or evidence whatever of fraud or mistake. See authorities under point 1. 4 Elliot on Railroads, sec. 1502; *Kirkland v. Dinsmore*, 62 N. Y. 171; *Grace v. Adams*, 100 Mass. 505. (4) A bill of lading must be construed with reference to all its parts, and in the light of the facts existing at the time of its issue, and such interpretation must be given it as to make the contract a rational one if possible. And ambiguities, if any in the language used, often disappear when the instrument is a printed form with certain clauses in writing. And where there is a variance in the printed and written clauses, "the written portions must prevail, and only so much of the printed matter in the blank form as is consistent therewith is to have effect; all the rest to be rejected." 2 Am. and Eng. Ency. of Law, 229, and cases cited. Looking at these bills of lading with these well established principles of law in view, the theory of the court, that the stipulation for demurrage was not a contract to pay $2 per car, as shown by its rulings on the evidence and instructions, was manifest error.

*Fyke, Yates & Fyke* for respondent.

(1) An agreement to pay not to exceed a given sum is not an agreement to pay a fixed amount, and at best, even were it clear that the demurrage referred to in the bill of lading meant demurrage at the point of consignment, still the inquiry would be open as to the reasonableness of the charge in view of all the circumstances attending the loading of the cars. An agreement to pay a demurrage of not to exceed $2 is not an agreement to pay $2 or any other sum, unless justly due under the terms of the contract for shipment. The contract does not definitely fix the time for loading. Nothing is said upon the subject. It does fix the time for unloading. In view of this, the inquiry was pertinent as to the reasonableness of the time consumed in loading. 5 Am. and Eng. Ency. of Law, 546, subhead 6 and note. (2) The theory upon which the trial court permitted evidence to go to the jury of the contract by telegram of September 2, is this: There is nothing inconsistent in the terms of the bill of lading and the telegraphic contract. The bill of lading permitted a charge of not to exceed five cents per hundred and $2 demurrage. The rate might have been much less. Therefore, even if it could be successfully claimed that the demurrage referred to is demurrage at the point of shipment (and it can not) still the contract is indefinite and may be made definite by another writing or by an additional contract either written or parol. *Harned v. R'y*, 51 Mo. App. 482, *loc. cit.* 490; *Lowenstein & Thomas v. Wabash*, 63 Mo. App. 68, *loc. cit.* 77. (3) Another legal principle involved in this matter suggests an approval of the holdings of the trial court. A principle with which the writer has, *nolens volens*, become

more or less familiar in the trial of another class of cases. The bill of lading is what may very properly be termed a unilateral contract. The railway company selected its language; it must, therefore, in all cases of doubt and uncertainty be resolved most strongly against its creator. If any authority is needed in support of this proposition we refer generally and severally to all insurance cases that we have lost in the courts of appeals—surely "a cloud of witnesses." It follows, that even if the bill of lading be taken as the whole contract under which plaintiff's logs were shipped, the demurrage referred to therein must be taken to mean, *first*, demurrage at the destination point, or, *second*, if demurrage at point of shipment, then not to exceed $2, but not necessarily $2 unless the charge of $2 can be shown to be justly due for an unreasonable detention of cars while loading. This matter was submitted to the jury on appropriate instructions, and its findings on the evidence are conclusive. Under no view of the case, warranted by the law and facts, is defendant entitled to a reversal.

GILL, J.—This is an action for damages growing out of an alleged conversion of five car loads of walnut logs which the plaintiff shipped over defendant's road from Platte City to Kansas City. Before the shipment, it seems that plaintiff had an agreement with defendant's division freight agent that the freight charges should be five cents per hundred, but when the bills of lading were written up by the local agent at Platte City the blanks were filled so that the same read that "this company guarantees that the rate of freight for the transportation from the place of shipment to Kansas City *shall not exceed five cents per hundred and $2.00 demurrage*," etc. Shortly after the cars arrived at Kansas City plaintiff tendered the

freight charges, computed at the rate of five cents per hundred, and demanded possession of the logs; but the defendant's agent, while conceding the freight charges to be as tendered, yet exacted the further charge of $2 on each car for demurrage—the same being claimed by reason of an alleged unreasonable delay by the plaintiff in loading the cars at Platte City. Defendant refused to deliver the logs unless this demurrage charge was also paid, which plaintiff declined to do. Defendant thereupon stored the logs with a warehouseman where they were sold for charges, and this suit followed. In the court below plaintiff recovered and defendant appealed.

The whole case rests upon the question whether or not the defendant was entitled, under its contract with plaintiff, to the demurrage charge of $2 per car.

COMMON carriers: constiuction of contract: demurrage: jury question.

For if this is so, then defendant had a lien therefor on the property and might retain the logs until it was paid. Defendant's counsel contends that it *was* so entitled by the language of the bills of lading. The trial court did not so construe the terms thereof, and in our opinion the ruling was clearly correct. The language used did not evidence an agreement to pay a specific sum for demurrage. The bill of lading reads, that the company agreed that the charges "*shall not exceed* five cents per hundred and $2 demurrage," this at most only fixed a maximum charge—an amount beyond which it should not go. It was an agreement or guaranty by the defendant that the demurrage charges would not *exceed* $2. Besides, when the entire bill of lading is read, it may be well contended, as plaintiff's counsel suggest, that this demurrage so contracted for related alone to delay that might attend the unloading of the logs at Kansas City; for on the face of the instrument, in large type, this clause

appears: "All car-load freight shall be subject to a minimum charge for trackage and rental of $1 per car for each 24 hours detention, or fractional part thereof, after the expiration of 48 hours from its arrival at destination." There is no pretense that plaintiff unreasonably delayed in demanding the goods at their destination. But conceding the mention of demurrage to have intended to apply to delay in loading the cars at Platte City, yet as already said the contract did not fix $2 a car as the price agreed. The most then that defendant could claim was an allowance for any such unreasonable delay at Platte City within the contract limit of $2. *Harned v. Railway*, 51 Mo. App. 482, 490. This question was properly submitted to the jury, and they found that plaintiff was not guilty of unreasonable delay in loading the cars at Platte City.

So, from whatever standpoint the case is viewed, it is clear, on the facts found, that defendant wrongfully refused to deliver the logs when demanded, on tender of the freight charges. It thus appears that the judgment is for the right party, and will therefore be affirmed. All concur.