*416       *JAMES GOGGIN *v.* KANSAS PAC. RY. CO.

### January Term, 1874.

**Common Carrier: Special Contract.** Where a railway company, being a common carrier of live stock, transports a car-load of cattle for the plaintiff at special rates, under a special contract signed by both parties, by the terms of which the plaintiff is to accompany the stock and superintend it on the way, and where, by another clause in the contract, it is stipulated that damages to such stock in transit shall not be allowed unless notice in writing of a claim therefor be given to the company at or before the time of unloading the cattle, and it appears that plaintiff did accompany the stock, and knew of the injury at the time, but did not give notice thereof for more than a year, *held,* that he cannot recover.[1]

Error from Davis district court.

The case is stated in the opinion.

*McClure & Humphrey,* for plaintiff in error.

*J. P. Usher, E. W. Dennis,* and *J. M. McDonald,* for defendant.

KINGMAN, C. J. This case brings up for review the decision of the district court sustaining a demurrer to the reply. The plaintiff in error sued defendant in error, alleging that he had sustained damages through the carelessness and negligence of the defendant *417 in the transportation of cattle over its *road. The company in its answer sets up a written contract of shipment, signed by both parties, by which the cattle were to be carried from Ogden to the state line, at special rates per car load, to be accompanied by the owner, and fed, watered, and cared for by him, in consideration of the special reduced rates. The contract stipulates that the company shall not be liable for loss by animals injuring themselves, or each other, or by jumping from the cars, delay of trains. or other damage, "except such as may result from the actual negligence of the company or its agents." There is also a stipulation that "no claim for loss or damage on live stock will be allowed, unless the same is made in writing before or at the time the stock is unloaded." The answer states further that the plaintiff accompanied the cattle, supervising and observing his stock, and was well aware of their condition when delivered, knew whether they had sustained injury or not when they were unloaded, yet did not then, nor for more than a year thereafter, make any demand in writing for damage sustained. The

---

[1] Special contract held void, so far as it attempted to restrict the liability of the railway company, or to impose additional burdens upon the shipper, as conditions precedent to a recovery for damages resulting from the negligence of the railway company. Kansas Pac. Ry. Co. v. Reynolds, 17 Kan. 251. A common carrier may relieve himself from the strict liability imposed on him by the common law by a special contract, but he cannot contract for exemption from the consequence of his own or his agents' negligence. Kansas City, St. J. & C. B. R. Co. v. Simpson, 30 Kan. 645; S. C. 2 Pac. Rep. 821. See the note to Missouri Val. R. Co. v. Caldwell, 8 Kan. 169.

reply admits the making of the contract set out in the answer, but alleges that the plaintiff signed the same under protest, after the cattle were in the car; that plaintiff also verbally notified the servants of the company of the damage before the cattle were unloaded from the cars; and immediately after giving verbal notice sought for writing materials to make out a written notice to serve on the agents of the company, but before he was able to find the materials, and write the notice, the cattle were unloaded, so that no notice was given. The reply controverts no statement in the answer. A demurrer was sustained to the reply.

If the defense set up in the answer is a good one, then the reply does not avoid it. It is no excuse for not performing a contract that it was signed under protest. The plaintiff had his option to have his cattle transported at the usual rates, and hold the company responsible as a common carrier, or at special rates on lower terms, and with less responsibility on the part of the carrier. He chose the latter, and cannot now avoid his contract by saying he signed *418 under protest. Neither *is the reason given for not giving the written notice sufficient. If the contract stipulation as to written notice is valid, then the inability to procure writing materials at the instant of the unloading of the cattle is no excuse for not giving notice for more than a year afterwards. If the stipulation is not valid, then no notice was necessary. This presents the real question in the case. The stipulation as to notice contravenes no statute. The parties were competent to make the contract, and did make it, and it must be held good unless it is contrary to public policy. How far a common carrier may limit his responsibility by special contract is not involved in this case, for the pleadings do not raise that issue. It is undoubtedly settled that the common carrier may relieve himself from the strict liability imposed on him by the common law, by special contract; but it seems that he cannot relieve himself from liability for his own negligence. The contract pleaded does not pretend to relieve the defendant for the consequences of his own negligence. It only stipulates that the shipper shall on his part perform certain duties. The reasons for this clause are set out in the answer, as follows: The defendant was engaged in transporting great numbers of cattle over its road, which were shipped further to market, or so commingled with other stock that it would be impossible to distinguish one car load from another, unless attention was called to them immediately; and the object of the notice was to relieve the company from false and fictitious claims, by having an inspection of the cattle before they were removed or mingled with other cattle, and proper damages ascertained and allowed,—of which reasons the plaintiff had full knowledge, and still chose to ship at reduced special rates. The reasons are cogent, and we are unable to see how it contravenes public policy that a special contract at reduced rates should stipulate that reasonable notice of injury should be given. We are un-

able to perceive any stronger objection to such a contract than exists in the case of any other insurer of goods to which the carrier's obligation is analogous, and which depends altogether upon the contract of the parties. New Jersey Steam Nav. Co. *v. Merchants Bank, 6 How. 382. But such a contract should be reasonable, and not such as to be a snare or fraud upon the public. What is a reasonable time must depend on many circumstances. In this case the plaintiff accompanied the cattle, feeding and superintending them, and by his reply admits that he knew of the injury at the time of the unloading, and could have given the notice immediately had he chosen to do so. Unless the notice was given immediately, it would be of no value to the defendant. Under these circumstances we cannot hold that the time when the notice was to be given was unreasonable. Of course, it is not understood by the phrase, "before or at the time the stock is unloaded," that it must be the identical moment, but so immediately that the object sought by the notice can be attained. Nor would such a notice be reasonable in the case of an ordinary shipper who did not accompany and superintend his stock, nor would it probably prevent a recovery for injuries sustained which could not readily be seen and actually should not be discovered till the time for giving the notice had expired. Yet, in such a case, good faith would require notice so soon as the injury was known. So far as we have been able to see, the authorities are in accordance with the views presented. See Bankard v. Baltimore & O. R. Co., 34 Md. 197; Wolf v. W. U. Tel. Co., 62 Pa. St. 83. If our reasoning is correct, then the cases of Adams Exp. Co. v. Reagan, 29 Ind. 21, and Southern Exp. Co. v. Carperton, 44 Ala. 101, are not in conflict with the conclusion we have arrived at. The first of these cases recognizes the rule that stipulations as to notice may be made, but states that the notice in the case under consideration was, under the circumstances, unreasonable. The same observation applies to the Alabama case.

The judgment is affirmed.

VALENTINE, J., concurring.