St. Louis & San Francisco R. R. Co., a corporation, v. D. M. Phillips.

(Filed September 5, 1906.)

1. PLEADING AND PRACTICE—Carriers—Action for Damages—Pleadings must show, What. Where an action is brought against a railroad company to recover damages for the killing and injury of certain horses shipped over the road, and where the petition alleges that the horses were shipped under the terms of a written contract between the plaintiff and defendant, evidenced by a bill of lading, and where the same is attached to the petition, marked "Exhibit A" and made a part thereof, and where said bill of lading contains the provision, "No carrier shall be responsible for loss or damage of any of the freight shipped, unless it is proven to have occurred during the time of its transit over the particular carrier's line, and of this, notice must be given within thirty hours after the arrival of the same at destination," and where written across the face of such bill of lading are the words, "released per contract" and where the contract thus referred to is set up in the answer of the defendant; and a copy thereof is at-

tached to said answer as an exhibit, and where such contract contains a provision "That, as a condition precedent to a recovery for any damage or delay, loss or injury to live stock covered by this contract, the second party will give notice in writing of the claim therefor to some general officer, or the nearest station agent of the first party, or to the agent at destination, or some general officer of the delivering line, before such stock is removed from the point of shipment or from the place of destination, and before such stock is mingled with other stock, such written notification to be served within one day after the delivery of such stock at destination, to the end that such claim shall be fully and fairly investigated; and that a failure to comply with the provisions of this clause shall be a bar to the recovery of any and all such claims:" And, where it is alleged in said answer that this provision of the contract has not been complied with, and where the plaintiff files a reply setting up only a general denial, such written contract is thereby admitted, and where neither the petition nor the reply contains an allegation of compliance with the conditions of the bill of lading or contract, and the said pleadings on the part of the plaintiff contain no allegation of waiver of such contract, and no facts are alleged therein tending to show an actual or substantial compliance with the said bill of lading or contract, and no excuse is offered or set up in the pleadings for the non-compliance, said pleadings do not state a cause of action in favor of the plaintiff, and a motion for judgment for the defendent on the pleadings should be sustained in the absence of any request for leave to amend by the plaintiff.

2. CARRIERS—Provisions Limiting Liability. The responsibility of a common carrier may be limited by an express agreement made with his employer at the time of his accepting goods for transportation, provided the limitation be such as the law can recognize as reasonable and not inconsistent, with sound public policy. Hence, an agreement that in case of failure by the carrier to deliver goods, he shall not be liable, unless a claim shall be made by the bailor or by the consignee within a specified period, if that period be a reasonable one, is not against the policy of the law, and is valid.

3. SAME—Same. The common law liability of a common carrier for the safe carriage of goods may be limited and qualified by special contract with the owner, provided such special contract does not attempt to cover losses occasioned by neglect or misconduct.

4. SAME—Same—Reasonable Provision. A stipulation in a contract of affreightment of live stock requiring the owner to give notice in writing of his claim for damages, to some officer of the company or its nearest station agent, before the stock is removed from the place of destination, is a reasonable stipulation, and binding on the owner, and he cannot recover on failure to

give such notice, though he did not go in person, or send an agent, with the stock, as in such case he should have sent a copy of this contract to the consignee, in order that the latter might have complied with the stipulation.

5. SAME—Same—Question of Fact, Where. Whether the time provided by the contract for giving notice of loss is reasonable or unreasonable is a question of fact to be determined by the circumstances of the case.

(Syllabus by the Court.)

*Error from the Probate Court of Oklahoma County; before Wm. P. Harper, Trial Judge.*

*Flynn & Ames,* and *R. A. Kleinschmidt,* for plaintiff in error.

*T. F. McMechan,* for defendant in error.

### STATEMENT OF FACTS.

On June 28, 1904, D. M. Phillips commenced this action in the probate court of Oklahoma county against the St. Louis & San Francisco Railroad Company, by filing his petition therein, claiming damages in the sum of $300, for the killing of one horse and the injuring of three others, while being transported by the railroad company from Oklahoma City, O. T., to Hoxie, Arkansas. On April 21, 1905, Phillips filed an amended petition, setting out in addition to the foregoing allegations, a copy of the bill of lading, and on it was endorsed, "released per contract." One of the provisions of said bill of lading is as follows:

"No carrier shall be responsible for loss or damage of any of the freight shipped, unless it is proved to have occurred during the time of its transit over the particular carrier's line, and of this, notice must be given within thirty hours after the arrival of the same at destination."

On the 29th of April, 1905, the railroad company filed its answer in said cause, which after containing a general denial, set up by way of further defense the execution of a live stock contract with Phillips covering said shipment, copy of which was attached to said answer and marked, "Exhibit A." It is alleged in said answer:

"That by the terms of said contract, it is, among other things, specifically provided, that, as a condition precedent to a recovery for any damages for delay, loss or injury, the shipper must give notice in writing to the nearest agent of the company within one day after the delivery of such stock at destination, and before the removal of the same from such destination; and defendant specifically avers that such notice in writing was not given as required, and plaintiff did not attempt to give such notice or make claim to any agent or officer of the company before said stock were removed from destination or mingled with other stock, and defendant had no notice of the alleged damage, or opportunity to investigate the same before said stock were so mingled and removed. and that, therefore, plaintiff is not entitled to recover under such contract for the injury, if any, sustained."

The provision of the contract referred to is section 11, and reads as follows:

"That, as a condition precedent to a recovery for any damages for delay, loss or injury to live stock covered by this contract, the second party will give notice in writing of the claim therefor to some general officer or nearest station agent of the first party, or to the agent at destination, or to some general officer of the delivering line, before such stock is removed from the point of shipment or from the place of destination and before such stock is mingled with other stock, such written notification to be served within one day after the delivery of such stock at destination, to the end that such claim shall be fully and fairly investigated; and that a fail-

ure to comply with the provisions of this clause shall be a bar to the recovery of any and all such claims."

To that part of the answer setting up this defense, the plaintiff filed a demurrer, which demurrer was overruled on the 27th day of May, 1905. Thereupon plaintiff filed a reply to said answer, which was a general denial, unverified. On the 9th day of June, 1905, plaintiff in error filed his motion in said cause for judgment on the pleadings, which motion was overruled by the court and exceptions noted. The cause came on for trial on the 9th day of June, 1905, a jury being empaneled; plaintiff in error objected to the introduction of any evidence on the part of the defendant in error, on the ground that the petition and reply did not state facts sufficient to constitute a cause of action, which objection was overruled by the court and exceptions noted. The plaintiff introduced his evidence and rested, and the railroad company, defendant, demurred thereto, which demurrer was overruled by the court, and exceptions saved. Thereupon evidence was introduced on behalf of the defendant, and at the conclusion thereof, plaintiff in error requested the court to give the jury a peremptory instruction to return a verdict for the defendant railroad company, which was overruled by the court, and exceptions saved. The defendant also requested the court to give the jury instructions number one, to thirteen, which the court refused to give, to which the plaintiff in error excepted. At the request of plaintiff in error, the court submitted to the jury twenty-eight special interrogatories. The case having been submitted to the jury they returned into court a verdict in favor of the defendant in error in the sum of $186.25, and also returned special findings of fact to the special interrogatories submitted to them. Thereafter, and

on the 13th day of June, plaintiff in error filed its motion in
said cause for judgment on the findings notwithstanding the
verdict of the jury, which motion was overruled and excep-
tions noted, and judgment was thereupon entered for the de-
fendant in error on the general verdict. From said order,
and the order of the court overruling a motion for new trial,
the plaintiff in error brings this appeal.

Opinion of the court by

IRWIN, J.: The plaintiff in error seeks a reversal of
this judgment on six different grounds: First, that plaintiff
in error was entitled to judgment on the pleadings in said
cause, and the court erred in overruling his motion therefor;
Second, the court erred in not sustaining the objection of the
plaintiff in error to the introduction of any evidence by the
defendant in error on the ground that the pleadings did not
state a cause of action in favor of the plaintiff; Third, the
court erred in overruling the demurrer of the plaintiff in
error to the evidence; Fourth, the court erred in refusing
the peremptory instruction asked by plaintiff in error, and in
giving the instructions to the jury that were given; Fifth,
the court erred in not sustaining the motion of plaintiff in
error for judgment on the special findings, notwithstanding
the general verdict; Sixth, the court erred in overruling the
motion of plaintiff in error for a new trial in said cause.

The first and second assignment of error may very
properly be discussed as one, as the same proposition of law
is involved in both, and practically the same state of facts is
presented thereby, to-wit: That the pleadings of the defend-
ant in error were wholly insufficient to state a cause of action,
and for this reason the defendant was entitled to a judgment

on the pleadings. The amended petition set up a copy of the bill of lading for the shipment in question, which contained a clause requiring the shipper as a condition precedent to claiming damage, to give notice thereof within thirty hours after the arrival of the same at destination, and said bill of lading specially referred to another contract in these words, "released per contract," which words were written, plainly across the face of the bill of lading. (Record, page 10.) The answer of the railroad company set up a copy of the contract referred to, alleged its execution by the plaintiff, Phillips, and specially alleged the failure of the plaintiff too comply with the condition precedent in his said contract. The reply filed to this answer by plaintiff, was a general denial, unverified, and therefore admitted the execution of said contract as alleged, under the statutes of this territory. The Statutes of Oklahoma, for 1903, section 4312, reads as follows:

"In all actions, allegations of the execution of written instruments and indorsements thereon, of the existence of a corporation or partnership, or of any appointment or authority, or the correctness of any account duly verified by the affidavit of the party, his agent or attorney, shall be taken as true unless the denial of the same be verified by the affidavit of the party, his agent or attorney."

Therefore, the execution of the contract being admitted, and the bill of lading referring thereto and containing practically the same provision in regard to notice as a condition precedent to any claim for damage accruing to the shipper, the compliance with said condition precedent, and with the terms of said contracts, could not be predicated or gathered from a general denial. It would certainly seem to be the

duty of the defendant in error, upon admitting the execution of the contract, to either especially allege compliance with the terms thereof, or to especially plead some of the facts, if any such there were, which might tend to show a substantial compliance with the terms of said contract, and which might tend to relieve him from compliance therewith, or he should have in some form have alleged a waiver of the terms of said contract on the part of the defendant. Neither of these things were done by the defendant in error. Now, it is a well recognized principle of pleading, that where a party relies for his cause of action upon a breach of a written contract, that the burden is upon him to allege and prove every material element necessary to his recovery thereunder. In other words, before he can complain of a breach of contract on the part of the other party, he must show that he has actually or substantially complied with the terms of the contract himself, or has been released therefrom by the other party. Now in this case, this bill of lading, and the reference to the shipping contract contained therein, was first brought into the case by the plaintiff in his petition, and was attached to the petition of the plaintiff as an exhibit, and made a part thereof. Upon this bill of lading, and its accompanying shipping contract the plaintiff based his cause of action. This, of itself, would put upon the plaintiff the responsibility of proving compliance with the material parts of said contract on his part. This is peculiarly true when we remember that the non-compliance with the essential parts of this contract was alleged in the answer of the defendant. The plaintiff's attention was called to the particulars in which he had failed to comply. with the contract, and his attention was challenged to that proposition by the answer of the de-

fendant. Then no legal denial of the contract was pleaded, no claim of compliance, either actual or substantial, and no claim of waiver was made. Now, if this provision of the bill of lading and the shipping contract was such a provision as was reasonable, valid and enforceable as a matter of law, then the burden was upon the plaintiff not only to prove, but to allege in his pleadings a compliance with the terms of the contract, for breach of which he sues. Now, the proposition presents itself, was this provision of the bill of lading and shipping contract a reasonable one, and one which the law would enforce? The validity of a contract of this nature and of this special provisions requiring notice in writing to be given of the loss or injury within a reasonable time as a condition precedent to the shipper's right of action, have been so repeatedly and often supported by the decisions of the various courts of this country as to become a well recognized and settled rule of law.

In the case of *Southern Express Co. v. Caldwell*, 21 Wallace, 264, the supreme court of the United States say:

"The responsibility of a common carrier may be limited by an express agreement made with his employer at the time of his accepting goods for transportation, provided the limitation be such as the law can recognize as reasonable, and not inconsistent with sound public policy."

"An agreement that in case of failure by the carrier to deliver goods, he shall not be liable, unless a claim shall be made by the bailor or by the consignee, within a specific period, if that period be a reasonable one, is not against the policy of the law and, is valid."

In the 6th Cyc., 508, it is held that a stipulation that the claim for damages shall be made before the animals are

removed from the place of delivery and mingled with other animals is valid. Other stipulations for a short time, of giving notice of damages in case of live stock have been sustained, and numerous authorities are therein cited to sustain this proposition.

In the case of *Tex. Central R. R. Co., v. Morris,* 1 White & W. C. Civ. Cas. Court App. 374, it is said:

"A railroad company may, by special contract, require a shipper of cattle to serve a written notice of a claim for damages for loss or injury to the cattle while in transit, before the cattle are removed from the place of delivery and mingled with other stock, as a condition precedent to his right to recover for such damages."

In the case of *Galveston H. & S. A. Ry. Co. v. Harmon,* 2 Wilson Civ. Cas. Court App. 136-137, it is said:

"A stipulation in a contract of affreightment of live stock requiring the owner to give notice in writing of his claim for damages, to some officer of the company or its nearest station agent, before the stock is removed from the place of destination, is a reasonable stipulation and binding on the owner, and he cannot recover on failure to give such notice, though he did not go in person, or send an agent, with the stock, as in such cases he should have sent a copy of his contract to the consignee, in order that the latter might have complied with the stipulation."

In the case of *A. T. & S. F. R. R. Co. v. Crittendon,* 44 Pac. 1000, the supreme court of Kansas say:

"So far as it required the shipper to give notice in writing of his loss or injury, it is a valid, binding contract. By its terms Crittendon was compelled to give notice in writing to the company, of his claim for loss or injury to such stock before said stock was removed from the place of destination on delivery and before said stock was mingled with other

18—Vol 17

stock. Failing to comply with the terms of this contract, he cannot recover. No notice was introduced in evidence: neither did Crittendon show that he was unable, for any reason, to produce it, and offer to prove its contents by a copy or otherwise. These provisions of the contract are just and equitable. The company is entitled to a written notice that the shipper claims damages, so as to permit the company to have a thorough investigation made of the nature of the claim and the condition of the stock before the stock is removed from its premises, and before it is mingled with other stock, so as to render its identification difficult.

"Where stock is shipped under written shipping contracts which provides, among other things, that, as a condition precedent to the right of the shipper to recover damages for loss or injury to said stock, he shall give notice in writing of his claim therefor, the shipper must prove such notice to have been given before he can recover."

In the case of *Louisville N. A. & C. Ry. Co. v. Widman*, 10 Ind. App. 92, 37 N. E. 554, it is said by the Indiana court:

"In an action for injuries to a mare shipped under a bill of lading which provides that the carrier shall not be liable for loss or damage unless notified within thirty days, a complaint containing no allegation of notice or performance by the plaintiff of all conditions on his part is demurrable."

In the case of *Texas & Pac. R. R. Co. v. Hamm*, 2 Wilson's Civ. Cas. Court App. 496, the court says:

"In an action against a railroad company for loss of cattle shipped over its line, the contracts of shipment offered in evidence contained the following clause: 'That, for the consideration aforesaid, said second party further expressly agrees that, as a condition precedent to his right to any damages for any loss or injury to said stock during the transportation thereof, or previous to loading thereof for ship-

ment, he will give notice in writing, verified by affidavit, of his claim therefor to some general officer of said first party or to the nearest station agent, before said stock is removed from the point of shipment or from the place of destination, and before the same shall have been removed,  *  *  *  and that a failure to fully comply with the terms of this clause shall be a complete bar to the recovery of any and all such claims.'   *Held:*   That a notice of loss in writing, verified by affidavit, was a condition precedent to plaintiff's right of action, and not only should have been *alleged,* but must have been proved, to entitle plaintiff to recover."

We take it to be the true rule of pleading, that where there is a condition precedent to be observed before an action can be maintained or a cause of action exist, the plaintiff must show that the condition has been performed, either actually or substantially, or that he has been in some way released from that condition by the act of the opposite party, and that in the absence of such averment, the petition does not state facts sufficient to constitute a cause of action.   This doctrine seems to be supported by the case of *Express Co. v. Harris,* 51 Ind. 127; *Insurance Co. v. Duke,* 43 Ind. 318; and *Railway Co. v. Morris,* 16 Am. & Eng. R. R. Cases, 259. This also seems to be sustained by a provision of our own statute.   Section 4326, of the Statutes of 1903, reads as follows:

"In pleading the performance of conditions precedent in a contract, it shall be sufficient to state that the party duly performed all the conditions on his part; and if such allegations be controverted, the party pleading must establish, on the trial, the facts showing such performance."

As we regard this provision of the bill of lading and the shipping contract as a condition precedent necessary to

be performed before the maintaining of this cause of action, we think it was incumbent upon the part of the plaintiff to plead a performance of that condition precedent, or a waiver of the same on the part of the defendant, and he having failed to do so, either in his petition, or reply, we think the pleadings did not state a cause of action in his favor, and it was error for the court to overrule the motion for judgment on the pleadings in favor of the defendant.

The next assignment of error urged by plaintiff in error, is that the court erred in overruling the demurrer of plaintiff in error to the evidence introduced by defendant in error. The main ground on which this demurrer should have been sustained was the failure of the defendant in error to introduce any proof whatever that the written notice required by the contract executed by him was given in accordance with the terms thereof. The record shows that the defendant in error admitted that no written notice was in fact given. If the action of the court in overruling this demurrer can be sustained, it must be on one of two grounds. First, that the facts and circumstances as developed in evidence show that the plaintiff substantially complied with the requirements of this contract. The record discloses that when the horses reached their destination, that some conversation took place between the agent of the company, and the person to whom the horses were consigned, relative to their damaged condition. The testimony of the consignee is that he informed the agent verbally, that the horses were damaged, and that he would not accept the same until he heard from the consignor. That the agent of the company looked at the horses, and ordered them taken out of the car, and fed and watered, the agent unlocking the car for that purpose, and

that the horses were appraised by three appraisers who were selected by the agent of the company. The testimony of one of the appraisers is that they appraised the horses under the direction of the agent of the company, but that the agent was not present, when said appraisement was made. The testimony of the other appraiser is that the horses were appraised under the direction, and at the instance and request of Phillips, the consignee, and that while the agent of the company was present, he took no part in the appraisement. The record does not show that any notice in writing was given to the company within thirty hours from the time the stock arrived at their destination, or at any other time prior to the commencement of this suit. The record further shows that no claim for damages was ever filed with the company, verbal or otherwise. The testimony of Van Osdall, who was with Phillips, the consignee, at the time the horses were received by him, is that he and Phillips were both strangers there, and that the three appraisers were pointed out to them by the agent, Hill, as competent men to make the appraisement He testified that no amount of damage was named by him in talking with the agent. Now, the question is, was this action on the part of the consignee, Phillips, a substantial compliance with the terms of the bill of lading and the shipping contract, which expressly provided that as a condition precedent to any right to recovery they should give notice in writing of the claim. Was their action such as would reasonably apprise the agent of the company at Hoxie, Ark., that they were making a claim against the company for damages? The only claim they made to him was that they would not receive the horses in their damaged condition until such time as they heard from Phillips, the consignor. No

claim was filed for any specific amount of damages, and as far as the record shows no request was made of the agent to notify the company of any claim for damages, and no claim was made that the damaged condition of the horses was due to any neglect or wrongful act of the company. It might reasonably be said that these horses were damaged; and from the fact that no claim for damage was filed with the company, that the company had a right to presume that the horses were damaged before they were taken for shipment by the company, or were damaged in some way for which the company was not responsible. But even granting, for the sake of argument, that a verbal claim was made, and that evidence on such verbal claim was considered by the court, notwithstanding the silence of the pleadings on that point, we think that such a notice, under the circumstances as shown in the record in this case would be inadequate to relieve the defendant in error from the terms of the contract. When the defendant in error signed this contract and shipped his horses under it, he agreed to abide by its provisions. In the contract stipulating that written notice of the loss or damage must be made in a certain time, it does not contemplate or authorize the giving of any other kind of notice, or in any manner except in the manner provided for in the contract. There is no claim made in this case that the time in which notice was to be given was unreasonable, or that there was no agent at the destination. No reason is assigned why the notice required by the shipping contract and bill of lading could not have been given in the way and within the time expressly provided for in the contract.

Now, the the only ground on which the action of the court in overruling this demurrer can be sustained is that

the acts of the agent of the company at the point of destination would amount to a waiver of this provision of the contract. In determining this question, we must bear in mind the language of the contract. On the face of this contract, in large type, larger than the type in which the main body of the contract is printed, and so placed upon the contract as to be conspicuous, are these words:

"No agent of this company has any authority to waive, modify, or amend, any of the provisions of this contract."

Now, we think that this provision in the contract, placed in such a conspicuous manner on the face of the contract, that the consignor with the exercise of any sort or kind of diligence must have been made aware of its existence, we do not think that the acts of the agent of the company as disclosed by this record are such as to have waived this provision of the contract so as to bind the railroad company.

The supreme court of this territory in recent decision, has clearly and expressly passed upon this question of waiver. It is true that the case then before the supreme court was the case of an insurance company, but we think there is no difference in principle between that case and the case at bar.

In the case of the *Deming Investment Company v. Shawnee Fire Insurance Company*, decided in September, 1905, this court says:

"Where a waiver of the stipulations and conditions contained in a policy of fire insurance, is relied upon as the act and conduct of an agent of the insurance company, it must be shown that the agent had express authority from the company to make the waiver, or that the company subsequently, with knowledge of the facts, ratified the unauthorized action of the agent.

"An agent for a fire insurance company, whose powers are strictly defined and limited by the express terms of the contract of insurance cannot act so as to bind his company beyond the scope of his authority.

"A contract in writing, if its terms are free from doubt and ambiguity, must be permitted to speak for itself, and cannot by the courts, at the instance of one of the parties, be altered or contracted by parol evidence, unless in case of fraud or mutual mistake of facts, and this principle is applicable to contracts of insurance."

If the rule was laid down that station agents of a railroad company, without express authority, could modify or change the plain, ambiguous terms of a written contract entered into with the company, and in variance with the express stipulations and conditions of the contract, the usefulness of such of such contracts and the necessity of them would be absolutely at an end. Such a doctrine would deprive the defendant company of the benefit of a contract which the courts have repeatedly declared to be reasonable, just, and valid.

In the case of *Sprague v. Missouri Pac. Ry. Co.*, 8 Pac. 465, the Kansas supreme court say:

"In an agreement between a railway company and a shipper, for the transportation of horses over the railway, there was a stipulation which provided that as a condition precedent to his right to recover damages for any loss or injury to the horses while in transit, the shipper would give notice in writing of his claim therefor to some officer of the said railway company, or its nearest station agent, before the horses were removed from the place of destination, or from the place of delivery to the shipper, and before such horses were mingled with other stock. *Held:* That the agreement is reasonable, and, when fairly made, is binding upon the parties thereto."

This case was a case very similar in its facts to the case at bar. It was a case brought in the district court of Cloud county, against the Missouri Pacific Railway Company, alleging in substance, that the defendant was a common carrier, and that on or about the second day of March, 1883, for a valuable consideration, the railway company undertook and agreed with the plaintiff to safely carry over its road from Atchison to Concordia, certain stock, goods, wares, and merchandise; that he delivered the property mentioned for shipment, in good condition, at Atchison; but the defendant negligently and carelessly managed the car upon which the property was shipped, and by reason of such negligence, and without any fault on the part of the plaintiff, four of the horses so shipped by the plaintiff were thrown down, bruised and injured so that one of them died and the other horses were more or less disabled, to the damage of plaintiff in the sum of $500. The railway company denied the allegations of negligence, and the terms of the contract as stated by the plaintiff, and alleged that the property had been shipped in accordance with the terms of a special agreement entered into between the plaintiff and the defendant, wherein it was stated that the company transported live stock only in accordance with certain rules and regulations, which were mentioned; and that, in consideration that the defendant company would transport for the said plaintiff the said property at the rate of $30.00 per car, the same being a special rate lower than the regular rate mentioned in the freight tariff of the railway company, and other considerations, the plaintiff agreed to release the defendant from some of the responsibility and risks imposed by law upon the railway company when acting as a common carrier. The contract is

set out at length in the answer; and it provided that the plaintiff should load and unload his stock at his own risk, and feed, water and attend to the same at his own expense. He was also to accompany and care for the stock while it was being transported over the defendant's road, and for that purpose the railway company was to furnish the plaintiff free transportation over its road for one person from the point of shipment to the destination. Among the stipulations of the contract is the following:

"And for the consideration before mentioned, said party of the second part further agrees that, as a condition precedent to his right to recover any damages for any loss or injury to said stock, he will give notice in writing of his claim therefor, to some officer of said party of the first part, or its nearest station agent, before said stock is removed from place of destination above mentioned, or from the place of the delivery of the same to the said party of the second part, and before such stock is mingled with other stock."

The reply of the plaintiff was a general denial, not verified. Upon the trial, it was expressly admitted that the special contract set up in defendant's answer was signed and executed by the duly authorized agents of the parties; and it was further admitted that if the plaintiff is entitled to recover under the contract for the injuries alleged by the plaintiff, the amount of such recovery should be $300.00. Testimony was then offered by the plaintiff to the effect that the horses were in good condition when delivered to the railway company at Atchison, Kansas. His brother was given a free pass over the road, and accompanied the train upon which the horses were shipped for the purpose of caring for the stock while it was being transported over the defendant's road. At several points on the route, he inspected them and

found them to be still in good condition. At the station named "Palmer," some distance east of Concordia, the horses were again examined by the plaintiff's brother, and were then all right; and that after returning to the caboose and before leaving that station, he felt several jars, but was unable to state what occasioned them, or whether the horses were injured thereby. Upon arriving at Clifton, the next station, he again examined the horses and found that some of them were lying down and apparently injured. He then demanded of the conductor that the car in which the horses were shipped should be backed up to the ·stock yards in order that the horses might be removed from the car. This was done, when the horses were unloaded and found to be considerably bruised. He then refused to reload the horses upon the car, took possession of them, and caused them to be taken across the country to the plaintiff's farm which was not far distant. The plaintiff further testified that when the car reached Concordia he paid the price agreed upon for the transportation of the same; but that no notice has ever been given to the conductor of that train, or to any officer or agent of the railway company, prior to the commencement of this action, that he claimed any damages for injury to his stock; that he knew the condition of the horses, and the extent of the injury to them, before they were taken to the farm, and yet he had not given any notice of any claim therefor.

When the plaintiff closed his testimony, the railway company interposed a demurrer to the evidence, which the court, after consideration, sustained. Upon this ruling the plaintiff raises and discusses several questions here, but as one of them disposes of the case, the others require no attention. If the contract of the parties is to be upheld, by which

it was agreed that before the plaintiff could recover damages for any injury to his horses, he must just give notice in writing of his claim therefor to some officer of the railway company or to its nearest station agent, before the horses were removed from the place of destination, or from the place of the delivery of the same to the plaintiff, and before they were mingled with other stock, then the demurrer to the evidence was rightly sustained, and the judgment should be affirmed.

The plaintiff contends that the agreement is not binding upon him, because it is not one permitted by the laws to be made, and for the further reason that it is without consideration. As a general rule, common carriers are held liable as insurers, and are absolutely responsible for any loss to the property intrusted to them, unless such loss is occasioned by the act of God or the public enemy. It is now a well established rule of law that this liability may be limited to a certain extent; but to accomplish this it must clearly appear that the shipper understood and assented to the limitation. Common carriers are not permitted, by agreement or otherwise, to exempt themselves from liability for loss occasioned by their negligence or misconduct. Such limitations are held to be against the policy of the law and would be void. But it is no longer questioned that they may, by special agreement, stipulate for exemption from the extreme liability imposed by the common law, provided that such stipulations are just and reasonable, and do not contravene any law or a sound public policy. That the agreement in question was executed by the plaintiff is admitted, not only by the pleadings, but it was expressly agreed to by him on the trial. There is no pretense that any deceit or fraud was practiced upon him by the railway company, in obtaining

his assent to the agreement. So far as appears in the testimony, it was fairly and understandingly entered into and executed. His authorized agent who accompanied the horses, and who had them in charge while passing over defendant's road, knew of this provision of the contract, and was acquainted with the condition of the stock before they were taken from the possession of the railway company. And the plaintiff, with full knowledge of this requirement, paid the freight charges agreed upon after the injury had been done without complaint, and without claiming any damages therefor, and gave no notice nor did he make any claim for damages prior to the commencement of this action.

The stipulation requiring notice of any claim for damages to be given cannot be regarded as an attempt to exonerate the company from negligence, or from the negligence or misfeasance of any of its servants. The company concede that such an agreement would be ineffectual for that purpose. It is to be regarded rather as a regulation for the protection of the company from fraud and imposition in the adjustment and payment of claims for damages by giving the company a reasonable opportunity to ascertain the nature of the damage and its cause. After the property has been taken from their possession and mingled with other property of a like kind, the difficulty of inquiring into the circumstances and character of the injury would be very greatly increased. That such a provision does not contravene public policy, and that it is just and reasonable, has been expressly adjudicated by this court.

Now, a comparison of the facts, or at least many of the facts in the case under consideration by the Kansas court, are

similar to the facts in this case.  In this case, as in that, there is no evidence of any deceit or fraud being practiced on the plaintiff by the railroad company in obtaining his assent to the agreement.  That the consideration of the agreement was a reduced rate of freight, and that such agreement was entered into by the plaintiff with a full understanding that he was making an agreement to ship this stock under a contract. that limited the liability of the company in case of loss or injury, and that by reason of that liability he was securing a reduced rate.  This is apparent when we read the contract, for on the face of the contract is the following language:

"This application is an election on my part to avail myself of a reduced rate, by making this shipment under the following contract, limiting the liability of such carrier instead of shipping the same at a higher rate without such limitations."

The case of *Goggin v. Kansas Pac. Ry. Co.,* 12 Kan. 324, was an action brought in that court to review the decision of the district court sustaining a demurrer to the reply.  The plaintiff in error sued defendant in error, alleging that he had sustained damages through the carelessness and negligence of the defendant in the transportation of cattle over its road.  The company in its answer sets up a written contract of shipment, signed by both parties, by which the cattle were to be carried from Ogden to the state line, at special rates per car load, to be accompanied by the owner, and fed, watered, and cared for by him, in consideration of the special reduced rates.  The contract stipulates that the company shall not be liable for loss by animals injuring themselves, or each other, or by jumping from the cars, delay of trains, or other damage, "except such as may result from the actual

negligence of the company or its agents." There is also a stipulation that "no claim for loss or damage on live stock will be allowed, unless the same is made in writing before or at the time the stock is unloaded." (It will be noticed that this contract is almost identical with the one in the case at bar.) The reply admits the making of the contract set out in the answer but alleges that the plaintiff signed the same under protest after the cattle were in the car; that plaintiff also verbally notified the servants of the company of the damage before the cattle were unloaded from the cars; and immediately after giving verbal notice, sought for writing materials to make out a written notice to serve on the agents of the company, but before he was able to find the materials, and write the notice, the cattle were unloaded, so that no notice was given. The reply controverts no statement in the answer. A demurrer was sustained. Then the court say:

"If the defense set up in the answer is a good one, then the reply does not avoid it. It is no excuse for not performing a contract that it was signed under protest. The plaintiff had his option to have his cattle transported at the usual rates, and hold the company responsible as a common carrier, or at special rates on lower terms, and with less responsibility on the part of the carrier. He chose the latter, and cannot now avoid his contract by saying he signed it under protest. Neither is the reason given for not giving the written notice sufficient. If the contract stipulation as to written notice is valid, then the inability to procure writing materials at the instant of unloading of the cattle is no excuse for not giving the notice for more than a year afterwards. If the stipulation is not valid, then no notice was necessary. This presents the real question in the case. The stipulation as to notice contravenes no statute. The parties were competent to make the contract and did make it, and

it must be held good unless it ·is contrary to public policy.
How far a common carrier may limit his responsibility by
special contract is not involved in this case, for the plead-
ings do not raise that issue.   It is undoubtedly settled that
the common carrier may relieve himself from the strict lia-
bility imposed on him by the common law, by special con-
tract; but it seems that he cannot relieve himself from the
liability for his own negligence.   The contract pleaded does
not pretend to relieve the defendant from the consequences of
his own negligence.   It only stipulates that the shipper shall
on his part, perform certain duties.   The reasons for this
clause are set out in the answer, as follows:   The defendant
was engaged in transporting great numbers of cattle over
its road, which were shipped further to market, or so com-
mingled with other stock that it would be impossible to dis-
tinguish one car load from another, unless attention was
called to them immediately; and the object of the notice was .
to relieve the company from false and fictitious claims, by
having an inspection before they were removed or mingled
with other cattle, and proper damages ascertained and al-
lowed—of which reason the plaintiff had full knowledge, and
still chose to ship at reduced special rates.   The reasons are
cogent, and we are unable to see how it contravenes public
policy that a special' contract at reduced rates should stipulate
that reasonable notice of injury should be given.   We are
unable to perceive any stronger objection to such a contract
than exists in the case of any other insurer of goods to which
the carrier's obligation is analogous, and which depends alto-
gether upon the contract of the parties.   *New Jersey Steam
Nav. Co. v. Merchant's Bank,* 6 How. 382.   But such a con-
tract should be reasonable, and not such as to be a snare or
fraud upon the public.   What is a reasonable time must de-
pend on many circumstances.   In this case the plaintiff ac-
companied the cattle, feeding and superintending them, and
by his reply admits that he knew of the injury at the time of
the unloading, and could have given the notice immediately

had he chosen to do so. Unless the notice was given immediately, it would be no value to the defendant. Under these circumstances, we cannot hold that the time when the notice was to be given was unreasonable. Of course, it is not understood by the phrase, 'before or at the time the stock is unloaded" that it must be the identical moment, but so immediately that the object sought by the notice can be attained. Nor would such a notice be reasonable in the case of an ordinary shipper who did not accompany and superintend his stock, nor would it probably prevent a recovery for injuries sustained which could not readily be seen and actually should not be discovered till the time for giving the notice had expired. Yet, in such a case, good faith would require notice as soon as the injury was known. So far as we have been able to see, the authorities are in accordance with the views presented."

Now, the strong resemblance between this case, and the case at bar, will be noticed. The contracts were almost identical. The liability is the same. The damages were known to the consignee who was the agent of the consignor at the time the stock arrived at its destination. The claim is made in the case at bar that verbal notice was given. The record shows that no other or different notice was ever given the company prior to the commencement of this suit, and it seems to us that it falls fairly within the case under consideration by the Kansas supreme court. And that court expressly says that the giving of the verbal notice was not sufficient, because they say, if the contract and stipulation as to written notice is valid, then the inability to procure writing materials at the instant of unloading the cattle is no excuse for not giving notice for more than a year afterwards, and in this case, no notice was given at the time that the stock arrived at the destination, and were found to be injured, by the

19—Vol. 17

agent of the consignor, nor at any time prior to the commencement of this suit.

In the case of *Express Co. v. Caldwell,* 21 Wall, 264, the supreme court of the United States say, on page 267 of the opinion:

"Hence, as we have said, it is now the settled law that the responsibility of a common carrier may be limited by an express agreement with his employer at the time of his accepting goods for transportation, providing the limitation be such as the law recognize as reasonable and not inconsistent with sound public policy."

In the case of *York Company v. The Central Railroad Company,* 3 Wall, 107, the court says:

"The common law liability of a common carrier may be limited and qualified by special contract with the owner, provided such special contract does not attempt to cover losses by negligence or misconduct."

In the case of *Railroad Company v. Lockwood,* 17 Wall, 357, the court says:

"A common carrier is always responsible for his own negligence, no matter what his stipulations may be. But an agreement that in case of failure by the carrier to deliver the goods, a claim shall be made by the bailor or by the consignee, within a specified period, if that period be a reasonable one, is altogether of a different character. It contravenes no public policy. It excuses no negligence. It is perfectly consistent with holding the carrier to the fullest measure of good faith, of diligence and of capacity, which the strictest rules of the common law ever required. And *it is* intrinsically just as applied to the present case. The defendants are an express company. We cannot close our eyes to the nature of their business. They carry small parcels, easily lost or mislaid, and not easily traced. They carry them in

great numbers. Express companies are modern conveniences, and notoriously they are very largely employed. They may carry, they often do carry hundreds, even thousands of packages, daily. If one be lost, or alleged to be lost, the difficulty of tracing it is increased by the fact that so many are carried, and it becomes greater the longer the search is delayed. If a bailor may delay giving notice to them of a loss, or making a claim indefinitely, they may not be able to trace the parcels bailed, and to recover them, if accidentally missent, or if they have in fact been improperly delivered. With the bailor, the bailment is a single transaction, of which he has full knowledge; with the bailee, it is one of a multitude. There is no hardship in requiring the bailor to give notice of the loss if any, or make a claim for compensation within a reasonable time after he has delivered the parcel to the carrier. There is great hardship in requiring the carrier to account for the parcel long after that time, when he has had no notice of any failure of duty on his part, and when the lapse of time has made it difficult, if not impossible to ascertain the actual facts. For these reasons, such limitations have been held valid in similar contracts, even when they seem to be less reasonable than in the contracts of common carriers."

In *Missouri Pac. Ry. v. Scott*, 2 Wilson's Civ. Cas. Court App. 324, the court says:

"A shipper must allege and prove giving of notice as a condition precedent. Where there was a stipulation in the contract of shipment between plaintiff and defendant railroad company, that, as a condition precedent to plaintiff's right to recover any damage for any loss or injury to stock, he would give notice in writing of his claim therefor to some officer of the company or its nearest station agent before removing said stock from the place of destination, a verbal notice given to the superintendent of the stock yard and the conductor of the train of his claim for damages is not suffi-

cient. Where a shipping contract provides that the shipper will give written notice of any injury to stock carried thereunder, a verbal notice is not sufficient to entitle plaintiff to recover."

Now, in the light of these decisions, we think that the demurrer interposed by the defendant at the conclusion of the plaintiff's evidence should have been sustained. To hold that the facts as developed in this record constitute either a substantial compliance with the terms of the contract, or a waiver thereof on the part of the company, would be to allow a party to disregard, a substantial and material part of a valid binding contract without the consent of the other party. It is the duty of the court to construe the contract as made by the parties, and not attempt to make contracts for them. In this case, it is apparent from the record that this contract was fairly and understandingly entered into by and between the parties and that it was done for the purpose of securing a reduced rate for the transportation of the stock, and contains unambiguous, clear and concise agreements on the part of the shipper, among which was, that he would, within thirty hours from the time of the arrival of the stock at its destination, give notice in writing to the company, or its agent, of any claim he might have for any damages, and he expressly provides that this shall be a condition precedent to his right to recover. There is no claim that this was a provision that could not be complied with, neither is any claim made that any attempt was made to comply with this condition of the contract according to the terms thereof. The condition of the stock at its destination was known to the consignee. He had the opportunity and the facilities of giving the notice required by the contract, and no excuse is offered by him why

he did not at that time comply with the terms of his own contract; and we cannot hold that in the face of the plain, unmistakable terms of this contract that the party can bring suit and recover for damages against the company without serving any written notice of any kind or character or without making any claim upon the company for damages prior to the bringing of this suit.

The evidence of the plaintiff expressly admits the execution of this contract, and the shipment of the horses in question under it. He also admits that no written claim for damages was made as required by the contract, and in that evidence no excuse is offered why such claim should not have been made in the manner and within the time as provided therein. The evidence does not show that any verbal claim for any specific amount of damages, or that a claim for damages which in any way itemized the kind and character of damages, was made by the defendant in error within the time provided by the contract, or at any time prior to the commencement of this suit.

Now, we are unable to see how there is anything unjust, inequitable, or unfair in this provision of the contract. These were parties of mature age, and experience. They were capable of making a contract. As such, they entered into a contract which was clear and unequivocal in its terms. By the very terms of that contract, it was expressly stipulated that this plaintiff would bring no action for damages against the company, unless he first notified the company, or its agents, in writing of his claim for damages. Now, if this contract was between two individuals, we are unable to see how a court could possibly hold that such an agreement was

not a condition precedent to be performed by the injured party prior to his bringing any suit thereon, and we can see no difference in principle whether the contract is between a railroad company on one side, and an individual on the other, than if it were between two individuals. If the contract is a hardship, it is a hardship which the plaintiff has put upon himself, and he must abide the consequences. He has expressly agreed that before he shall commence any suit against the company for damages, he would file his claim for damages in writing, which he has not done. For that reason, we think the demurrer of the defendant should have been sustained.

A reversal of this case is asked for on several other grounds, among which is the fact that the court overruled the motion of the defendant for judgment on the special findings, notwithstanding the general verdict. Also that court erred in giving instructions to the jury, but as we think the grounds already discussed are sufficient for a reversal of this case, it is not necessary to enter into a discussion of the other points raised.

For the reasons herein expressed, this case is reversed, and remanded to the probate court of Oklahoma county, with directions to that court to sustain the motion of the defendant for a judgment on the pleadings, at the costs of the defendant in error.

All the Justices concurring, except Pancoast, J., who qualifies his concurrence as below.

---

I concur in the opinion in this case except upon the question of notice. The plaintiff should have pleaded the

verbal notice shown by the evidence to have been given.   Had this been done, I am of the opinion that it should be held to be equivalent to the written notice provided for in the contract, and a sufficient compliance therewith with reference to notice.

J. L. PANCOAST, J.