St. Louis Southwestern Railway Company *v.* Grayson.

Opinion delivered January 25, 1909.

1.  Carriers—live stock—waiver of notice of damages.—A stipulation in a bill of lading for live stock requiring notice in writing of a claim for damage within twenty-four hours after delivery of the stock at destination was waived by the carrier where it permitted the shipper to incur trouble and expense in making proof·of such damages. (Page 157.)

2.  Same—connecting lines—liability of initial carrier.—A stipulation in a contract for an interstate shipment of live stock over connecting lines to the effect that the initial carrier should not be liable for any loss or injury to the stock after the same were delivered to a connecting carrier was void, being in conflict with section 7 of the act of Congress of June 29, 1906, known as the Hepburn Act. (Page 158.)

3.  Appeal and error—invited error.—Appellant cannot complain of an erroneous instruction which was given at his request. (Page 159.)

4.  Same—harmless error.—Where the verdict and judgment in a case are right, the case will not be reversed for error in an instruction. (Page 159.)

Appeal from Greene Circuit Court; *Frank Smith,* Judge; affirmed.

*S. H. West* and *J. C. Hawthorne,* for appellant.

1.  To be effectual, a waiver must not only be made intentionally, but with knowledge of the circumstances. There was here no agreement, either verbal or written, to waive the stipulation in the contract. If waived at all, it was by the conduct of the agent Wise; but nothing in the record indicates either that he knew of the stipulation or that he intended to waive it. 105 U. S. 359; 9 Am. St. Rep. 571; 116 Fed. 381; 82 Fed. 406; 65 Ark. 240; 87 Ark. 326.

2.  The evidence is not sufficient to warrant the jury in finding for plaintiffs. Damages resulting from the delay by the Terminal Association should not be visited upon appellant. 85 Am. Dec. 240.

*Huddleston & Taylor,* for appellees.

1.  The shipping contracts, prepared by appellant's agent, signed by appellees, without being afforded an opportunity to read them, after the cattle were loaded and the train was on the point of starting, were never legally entered into. Therefore appellees declared upon a special contract based upon the com-

mon-law duty and liability of the appellants. The shipping contracts were not valid. 82 Ark. 359; 87 Ark. 339. And appellant is liable for the injuries, even if they occurred on the line of
a connecting carrier. 74 Ark. 9; 83 Ark. 87.

2. Under the Hepburn Act of Congress, approved June 29,
1906, this being an interstate shipment, appellant could not lawfully restrict its liability for damages to such injuries as occurred
on its own line. See § 7 of the act; 158 Fed. 649.

3. Under the evidence, the clause requiring written notice
in one day was waived. 70 Ark. 401; 6 Cyc. 509; 51 Mo. App.
482; 13 Ky. Law Rep. 461; 60 Pac. 608.

HART, J. On the 12th day of July, 1907, the plaintiffs instituted this action against the defendant, and alleged that they
owned and were feeding a large herd of cattle at Jonesboro, Arkansas, and on January 13, 1907, at about 2 o'clock P. M., they
loaded on the defendant's line 251 head into ten cars, to be
transported to the National Stock Yards in East St. Louis, in
the State of Illinois, and the defendant unnecessarily and negligently delayed the shipment for about eleven hours. The cattle
were destined for the market of Monday, January 14, but on account of the negligence of the defendant they were not delivered
in time for the market of that day. There was a depreciation in
the market price of cattle, and a depreciation of the cattle themselves, on account of the long delay, which the jury found to be
$478.

The defendant answered, admitted it received the cattle at
the time mentioned, and alleged it transported them a distance
of 260 miles, and delivered them to its connecting carrier at 6
o'clock A. M., on the 14th day of January, 1907. It denied having any knowledge or information sufficient to form a belief as
to the extent of the exposure or delay of said cattle, after they
were delivered to its connecting carrier, and further alleged that
at the time the cattle were shipped the plaintiff and defendant
entered into a contract for a valuable consideration, wherein it
was stipulated that the defendant should not be liable for any
loss or injury to the stock transported, happening or accruing
beyond its own line, and in the event of an injury or loss the
carrier on whose line the loss or damage occurred should be
liable, and that no loss or damage occurred while the stock were
in its possession.

The defendant further alleged that it was stipulated in said contract that the plaintiffs should give notice in writing of their claim within one day to some general officer, or to the nearest station agent of this defendant, or to the agent at the destination of said stock before the same were removed from the point of destination, to the end that such claim might be investigated, and that such notice was not given.

At the request of the plaintiffs the court gave the following instruction:

"4. You are instructed that the defendant may waive the right to insist upon the one day's notice required by the contract, and by waiver is meant some action of the defendant, its proper agents, servants or employees, by which it evinces an intention not to rely or insist on this clause in the contract, or an agreement expressed or implied not to rely upon the same."

Counsel for appellant contend that the judgment should be reversed because this instruction was given.

The contract stipulates that the shipper shall give notice in writing of any claim of damage he may sustain to the nearest station agent of the defendant, or to some general officer of the defendant, or to the agent at destination, before the stock is removed from the point of shipment, and before such stock is mingled with other stock; such notification to be served within one day after the delivery of stock at the destination, to the end that such claim may be duly and fairly investigated, and that the failure to comply with the provisions of this clause shall be a bar to a recovery of any and all such claims.

It will be seen from the instruction given on this point that the court below recognized the validity of the stipulation requiring the shipper to give notice of the damages sustained within one day after the arrival of the cattle, but submitted to the jury the question as to whether the defendant waived its right to insist upon the failure to give notice as a defense to the action. Inasmuch as we think that there was sufficient testimony to warrant the jury in finding that the notice was waived, it will not be necessary for us to pass upon the reasonableness of the notice as affecting its validity as a defense.

The facts in reference to the notice are as follows:

The claim was presented in person by E. E. Overstreet for

Grayson and Seitz to S. C. Johnson, general auditor of the railroad company. He referred Overstreet to Mr. Wise, the chief clerk in the claim department. Overstreet then filed the claim with Wise, who told him that his department would give the matter prompt attention, and investigate it thoroughly, and that it could be adjusted if the shippers had been damaged. After that Overstreet had some correspondence and several conversations with Wise relative to the adjustment of the claim. In one of these conversations Wise told him that the claim had been investigated, and that they were having trouble with the connecting lines. That they considered that the Cotton Belt (appellant) had given the shipment satisfactory handling, although they conceded that the shippers had been damaged, and told Overstreet that the claim ought to be settled. In every conversation with Overstreet, the officials of the railroad said they thought that the matter ought to be settled, and that they would try to get the Iron Mountain Railway Company and the Terminal Association to stand their proportion of the damage. Finally, after failing to get a settlement, a request was made by appellees for the return of the original claim papers. The general auditor of the railroad company answered that the papers relative to the claim had been referred to the general manager of the Iron Mountain Railway Company, and further wrote: "I have deferred replying to your letter, thinking it possible that I could obtain possession of the claim papers and write you with a view of effecting a settlement. The papers, however, have not been sent back to our general manager up to date. I will keep the matter before me and endeavor to obtain possession of the claim papers and advise you definitely in the course of the next few days as to what we are prepared to do."

It appears from the record that the contract of shipment was sent in to the railroad company with the claim for damages.

The stipulation in the contract of shipment requiring notice in writing of a claim for damage within 24 hours was for the protection of the railroad compainy, and may be waived by it.

"The requirement as to making claim for damages within the time and in the manner specified may be waived by failing to object to the form of a defective notice, or by entertaining and proceeding to consider and negotiate with reference to the claim." 6 Cyc. 509 and cases cited.

In the case of *Wallace* v. *Lake Shore & M. S. R. Co.,* 133 Mich. 633, the court said: "The waybill contained another provision, that no claim for damages should be made unless filed within five days, and verified by the affidavit of the shipper or his agent. It appears that the claim was filed on the 13th or one day late; but it also appears by the testimony of Mr. Miller, who acted for the plaintiff, that the claim was returned to him to have the freight bill attached, and that this was done, and the claim again placed with the defendant's agents, who, after examination and further correspondence, declined to make payment, but not upon the ground of the claim having been filed too late. We think this constituted a waiver of the right to insist upon time."

In the case of *Hudson* v. *Northern Pacific Ry. Co.,* 92 Iowa 231, 54 Am. St. Rep. 550, it was held:

"1.    A waiver on the part of a railroad corporation of a stipulation in a contract to give notice in writing of a claim of injury to stock shipped by it before removing such stock from its place of destination and before mingling it with other stock, may be inferred from its referring the claim to its claim department and subsequently requesting that a bill of the alleged damages be made out, and, after it was made out, offering to pay certain items thereof.

"2.    A forfeiture will be deemed waived by any agreement, declaration, or course of action on the part of him who is benefitted by such forfeiture which leads the other party to believe that by conforming thereto the forfeiture will not be incurred." See, also, *Harned* v. *Mo. Pac. Ry. Co.,* 51 Mo. App. 482.

In the present case the claim was presented to a general officer of the appellant company. He directed that the claim be presented to the chief clerk in the claim department, which was accordingly done, and negotiations looking to an adjustment were pending for sometime thereafter. Appellees were put to the trouble and expense of doing this. Appellant proceeded to investigate the claim, led appellees to believe that the claim would be settled on its merits, and all the while the contract of shipment was in hands of appellant's claim agents. We think the testimony was sufficient to warrant the jury in finding that appellant waived the immediate notice stipulated in the contract.

Counsel for appellant also insist that the evidence was not

sufficient to warrant the jury in finding for appellees. This contention is based upon the fact that the contract of shipment contained a clause restricting its liability to loss or injury on its own line of railroad. The court below recognized the validity of this clause of the contract, and instructed the jury, at the request of appellant and over the objection of appellees, as follows:

"The jury are instructed that if they find from the testimony that the plaintiffs and defendant entered into a contract whereby it was agreed that this defendant should not be liable to the plaintiff for damages or any loss or injury to the cattle sued for in this action after the same had been delivered to a connecting carrier, you are instructed that such agreement is valid and binding, and that the defendant sued in this action is not in any way liable for damages accruing to the stock after it was delivered to the connecting carrier."

The instruction was erroneous. This was an interstate shipment, and the contract of shipment was made on January 13, 1907. The clause referred to is in violation of the provisions of the last two paragraphs of section 7 of an act of Congress, known as the Hepburn Act, which went into effect on June 29, 1906, and is therefore void.

In an able and exhaustive opinion delivered by Hon. John H. Rogers, District Judge of the Western District of Arkansas in the case of *Smeltzer* v. *St. Louis & San Francisco R. Co.,* 158 Fed. Rep. 649, it was held that "The Hepburn Act of June 29, 1906, making the initial carrier liable for losses sustained beyond the terminus of its line where property is received for transportation from a point in one State to a point in another State, and providing that carriers engaged in interstate commerce shall make through routes and rates with other carriers, is a valid exercise by Congress of the power given by the Constitution to regulate commerce among the several States, and does not interfere with the liberty of contract nor deprive the carrier of its property without due process of law."

While the court erred in giving this instruction, it was given at the request of appellant, and the finding of the jury and the judgment of the court were right. Appellant cannot therefore

complain. *Gibbons* v. *Dillingham,* 10 Ark. 9; *St. Louis Southwestern Ry. Co.* v. *Russell,* 64 Ark. 236.

Therefore, finding no prejudicial error in the record, it is ordered that the judgment be affirmed.