## ST. LOUIS & S. F. R. CO. v. LADD.

No. 835.    Opinion Filed May 14, 1912.

Rehearing Denied June 18, 1912.

(124 Pac. 451.)

1.    CARRIERS—Contract of Shipment—Limitations.    A shipper of live stock cannot, in the absence of fraud by the carrier, avoid limitations of the carrier's liability contained in the bill of lading or shipping contract by showing that he executed the contract hurriedly, or without due care, or that he was ignorant of its contents, or failed to read the same.

2.    SAME.    By the laws in force in the territory of Oklahoma prior to statehood, a provision in a live stock contract or bill of lading to the effect that, as a condition precedent to a recovery for any damages by such contract, the shipper will give notice in writing of the claim therefor to some general officer or the nearest station agent of the carrier or to the agent at destination or to some general officer of the delivering line before such stock is removed from the point of shipment or from the place of destination, and before such stock is mingled with other stock, such

notice to be served within one day after the delivery of such stock at destination, was valid.

3.  **SAME—Live Stock Shipment—Notice of Injury.**  Where, from the nature of the injury alleged and proved to have been inflicted upon the cattle, it must have been apparent at once upon their arrival at destination that they were seriously damaged and that there was nothing to prevent the shipper from making the necessary claim and giving the railroad company an opportunity to examine the live stock within the time and in the manner limited in the shipping contract, the question of the reasonableness of such a provision is a question of law for the court.

4.  **SAME—Limitation of Liability—Waiver of Stipulations.**  A stipulation limiting the liability of the carrier or fixing the time and manner of giving notice or presenting claims may be waived by the carrier impliedly, by conduct, as well as expressly.

5.  **SAME—Notice of Damage—Waiver.**  Where there is evidence tending to show that the freight claim agent of a common carrier receives a claim for damages to a shipment of live stock after the time limited by a clause of the shipping contract requiring notice, which has not been complied with by the shipper, has expired, treats it as pending and then rejects it on other grounds, the question of whether the carrier intends to waive the notice clause as a defense is a question of fact for the jury.

(Syllabus by the Court.)

*Error from Grady County Court;*
*N. M. Williams, Judge.*

Action by G. W. Ladd against the St. Louis & San Francisco Railroad Company.  Judgment for plaintiff, and defendant brings error.  Reversed and remanded, with directions.

*W. F. Evans, R. A. Kleinschmidt, W. C. Mitchell,* and *Fred E. Suits,* for plaintiff in error.

*F. E. Riddle,* for defendant in error.

KANE, J.  This was an action by the defendant in error, plaintiff below, against the plaintiff in error, defendant below, to recover damages to a shipment of cattle shipped by the plaintiff over the defendant railway from Tuttle, Okla., to Kansas City, Mo.  The petition contained two paragraphs; the first being to the effect that through the negligence of the officers, agents, and employees of the defendant the train on which said cattle were shipped was delayed and said cattle were on the road standing

in the cars for about 50 hours longer than was necessary and beyond what was the reasonable time required for transporting and delivering said cars at Kansas City, and that thereby said cattle were injured in looks and appearance, and were caused to be in a stale and stupid condition, and to lose extra flesh to the amount of 50 pounds per head. The second paragraph was to the effect that there was a decline in the market between the day said cattle should have been in Kansas City and the day they arrived there, on account of which delay said cattle brought less on the market by reason of their condition than they would have brought had they been in the good condition they would have been in if they had been delivered within a reasonable time. The action was in form an ordinary action at law, based upon the theory that the railway company had violated its common-law duty as a common carrier in the particulars above set out. The answer of the defendant, after admitting it received the shipment of cattle, alleged, in substance, that at said time it had two rates for the transportation of live stock, to wit, a rate at carrier's risk, and a reduced rate under a contract limiting the liability of the carrier, and that plaintiff had the option of shipping said stock at either of said rates; that plaintiff elected to ship said cars of cattle at the reduced rate, and requested in writing the transportation of said cattle at such reduced rate, under the terms of the contract limiting the liability of the carrier. Then follow allegations setting up noncompliance with several of the conditions of the special contract by the plaintiff. The reply amounted to a general denial. On the trial there was a verdict for the plaintiff, upon which judgment was duly entered, to reverse which this proceeding in error was commenced.

It is admitted that plaintiff signed the special contract, but he contends that he did so under such circumstances as not to charge him with knowledge of its contents, and that he did not have an opportunity to exercise the option of choosing the rate under which he desired to ship. It seems that the cattle were loaded just a few moments before the departure of the train on which they were to be transported; that, immediately after they were loaded and before the shipper had time to get his bill of

lading or sign his contract, the train crew commenced the necessary switching operations to transfer the loaded stock cars from the place they were loaded to their proper place in the train which was to carry them to their destination; that while this was going on the shipper went to the station agent, and signed the special contract referred to without reading it; that he made no inquiry whether or not the company had two rates, and the agent did not tell him that there were two rates, nor read the contract to him, nor call his particular attention to the conditions contained therein. It is also admitted that the cattle were on the road longer than the time usually necessary to transport them from Tuttle, Okla., to Kansas City, Mo., and that on their arrival at the market in Kansas City the cattle were considerably shrunken in flesh.

The rule seems to be well settled that a shipper of live stock cannot, in the absence of fraud by the carrier, avoid limitations of the carrier's liability contained in the bill of lading or shipping contract by showing that he executed the contract hurriedly, or without due care, or that he was ignorant of its contents, or failed to read the same. *Nashville, etc., R. Co. v. Stone,* 112 Tenn. 348, 79 S. W. 1031, 105 Am. St. Rep. 955; *Hoffman v. Metropolitan Exp. Co.,* 111 App. Div. 407, 97 N. Y. Supp. 838; *Wabash, etc., R. Co. v. Black,* 11 Ill. App. 465; *Stewart v. Cleveland, etc., R. Co.,* 21 Ind. App. 218, 52 N. E. 89; *Patterson v. Kansas City, etc., R. Co.,* 56 Mo. App. 657; *Mills v. Weir,* 82 App. Div. 396, 81 N. Y. Supp. 801; *Johnstone et al. v. Richmond, etc., R. Co.,* 39 S. C. 55, 17 S. E. 512. "As has been said by one court," says Elliott in his work on Railroads (vol. 4, sec. 1502a), "it would tend to disturb the force of all contracts if one in possession of ordinary capacity and intelligence were allowed to sign a contract and act under it in the enjoyment of all its advantages, and then to repudiate it upon the ground that its terms were not brought to his attention. In the absence of all fraud, misrepresentations, or mistakes, it must be presumed that he read the contract, and assented to its provisions." In the case at bar it is apparent that it was the desire of the shipper that his cattle should be forwarded on the train they did go, and that the haste

was necessary in order that his wishes in that respect could be carried out. There is no charge of fraud on the part of the railway company or its agents in the matter, and there seems to be an entire lack of any of the other ordinary grounds for relieving a competent party from the performance of conditions contained in a contract voluntarily signed by him. The evidence shows there were in fact two tariff rates on live stock, one of them, the higher rate, at the carrier's risk, the other, the lower rate, one of limited liability. One of the sections of the special contract reads as follows:

"This application is an election on my part to avail myself of a reduced rate by making this shipment under the following contract, limiting the liability of such carrier, instead of shipping the same at a higher rate without such limitations."

And another section (section 15) is as follows:

"That in making this contract the undersigned owner, or agent of the owner, of the stock named herein, expressly acknowledges that he has had the option of moving this shipment under the tariff rate, either at carrier's risk or upon a limited liability named herein, and expressly accepts and agrees to all stipulations and conditions named herein."

If, under the doctrine heretofore adverted to, the shipper was bound by the other sections of the contract, he was also bound by the ones above quoted, and, of course, cannot repudiate them upon the ground that the terms of the contract were not called to his attention before he signed it. Having reached the conclusion that the special contract is binding upon the shipper, the question arises, Has he complied with its terms? The principal defense of the railway company is based upon an alleged failure of the plaintiff to comply with section 11 of the contract, which provides:

"That, as a condition precedent to a recovery for any damages for delay, loss or injury to live stock covered by this contract, the second party will give notice in writing of the claim therefor to some General Officer or the nearest station agent of the first party, or to the agent at destination, or some General Officer of the delivering line, before such stock is removed from the point of shipment or from the place of destination, and before such stock is mingled with other stock, such written notification to be served within one day after the delivery of such stock at

destination, to the end that such claim shall be fully and fairly investigated; and that a failure to fully comply with the provisions of this clause shall be a bar to the recovery of any and all such claims."

It seems to be conceded that the notice required by section 11 was not given within the time limited, and it is also conceded that by the laws in force in the territory of Oklahoma at the time this cause of action arose a provision in a live stock contract or bill of lading providing for written notice of damages within a specified time is valid if such provision is reasonable. But counsel for defendant in error contends the question of reasonableness was submitted to the jury upon proper instructions from the court, and, as it is a question of fact to be decided by the jury, their finding thereon is conclusive. No doubt to sustain such a provision as a binding condition in any given case, it must appear from the circumstances which there prevail that it is just and reasonable, but the cause of action in the instant case accrued prior to statehood and there is nothing to distinguish it from *St. L. & S. F. R. Co. v. Phillips,* 17 Okla. 264, 87 Pac. 470, where the notice clause in a similar contract was held to be reasonable as a question of law, and in *St. L. & S. F. R. Co. v. Cake,* 25 Okla. 227, 105 Pac. 322, where this court followed the rule laid down in the Phillips case. The Cake case was also an action for damages to live stock occasioned by the negligent delay in forwarding the shipment, and seems to be in point in all particulars. From the very nature of the injuries alleged to have been inflicted upon the cattle, it must have been apparent at once upon their arrival at their destination that they were seriously damaged, and there was nothing to prevent plaintiff from making the necessary claim and give the railroad company an opportunity to examine the live stock before it was removed from their premises and mingled with other cattle.

Plaintiff contends that the railroad company waived noncompliance with the notice provision of said contract as a defense, and even if said provision is held to be reasonable, he is still entitled to recover. The evidence shows that the plaintiff, through his agent, the Kansas City Live Stock Commission Company, some

time after the cattle were sold, and mingled with other stock, presented the claim to the freight claim agent of the railroad company, and said agent, without adverting to the failure to give the notice within the time prescribed, made some effort to adjust the claim, which effort seems to have failed for reasons other than lack of the required notice. During these negotiations the plaintiff received letters from Mr. Leith, freight claim agent of the company, as follows:

"Frisco—St. Louis & San Francisco Railroad Co. Freight Claim Department. Jul. 16, 1907. St. Louis, ———, 1907.

"Dear Sir: Your claim No. ——— for S O D $441.29 on account of is received and shall have attention. If necessary to communicate with us again, please refer to claim No. Frisco System 389158. Yours truly, J. E. Leith, Freight Claim Agent. Addressed: G. W. Ladd, Chickasha, I. T. Postmark St. Louis, Mo., Jul. 16, 7 p. m., 1907."

"Frisco. St. Louis & San Francisco Railroad Co. Freight Claim Department. Jul. 16, 1907. St. Louis, ——— 190.

"Dear Sir: Your claim No. ——— for S. O. D. $441.29 on account of G. W. Ladd is received and shall have attention. If necessary to communicate with us again, please refer to Claim No. 389158. Freight Claim Department, Frisco System. Yours truly, J. E. Leith, Freight Claim Agent. Addressed: Kansas City Live Stock Com. Co., Kansas City, Mo. Postmark St. Louis, Mo., July 16, 7 P. M. 1907."

"Frisco. St. Louis & San Francisco Railroad Company. Freight Claim Department. J. E. Leith, Freight Claim Agent. St. Louis, Oct. 10, 1907. No. 389158. G. W. Ladd, Chickasha, I. T.

"Dear Sir: Some time ago the Kansas City Live Stock Commission Co., filed a claim for your account for $441.29. Now, I find that while the train that was handling the two cars of cattle was in some trouble, these cars were not derailed nor damaged in any manner and the cattle was all in good shape. This is shown by their condition at Kansas City and there was no difference of 25 cents per hundred in the market; in fact, the market of the 25th is quoted steady to 10 cents lower and I believe if we pay a nickel on the railroad weight of 88400 pounds, which was the weight we collected our charges on, in addition I will allow a reasonable shrinkage and the feed of $12.00, that it will represent our liability. If you want my draft for $100.00 to settle the claim,

please so advise and it will be properly mailed to you. Yours truly, J. E. Leith."

On the former hearing we were impressed by the reasoning in *Old Dominion S. S. Co. et al. v. Flanary & Co.,* 111 Va. 816, 69 S. E. 1107, *Atlantic Coast Line R. Co. v. Bryan,* 109 Va. 523, 65 S. E. 30, and cases of that class, which hold that, if waiver by conduct is relied upon, it must appear that the shipper was caused to occupy a more disadvantageous position than he would have occupied but for that conduct, and held that inasmuch as the conduct upon which the waiver was based occurred after the time for giving the notice had expired and there was nothing to indicate that the carrier intended to waive its rights under the contract, or to show that the shipper was placed in any worse attitude by what was done, there was no waiver as a matter of law. On rehearing, counsel for defendant in error call our attention to authorities which convince us that there is sufficient evidence in the record tending to show an intention on the part of the railway company to waive the notice provisions of the shipping contract as a defense to take the case to the jury on that question.

Mr. Elliott, in his work on Railroads (2d Ed.) sec. 1514, states the general rule as follows:

"A stipulation limiting the liability of the carrier or fixing the time and manner of giving notice or presenting claims may be waived by the carrier impliedly, by conduct, as well as expressly. Thus where a claim is received and acted upon, after the expiration of the time limited, without any objection on that account, the carrier may be deemed to have waived the benefit of the limitation as to the time for presenting it."

A great many authorities are cited in support of the text. Hutchinson on Carriers (3d Ed.) sec. 444, cites *McFall v. Railroad Co.,* 117 Mo. App. 477, 94 S. W. 570, in support of the proposition that, "where the carrier receives a claim after the time limited for presentment has expired, treats it as pending, and then rejects it on other grounds, he will be deemed to have waived his right to notice within the time limited." The following cases seem to be to the same effect: *Blackmer & Post Pipe Co. v. M. & O. R. et al.,* 137 Mo. App. 479, 119 S. W. 1; *Harned v. Mo. Pac. Ry. Co.,* 51 Mo. App. 482; *M. & M. Transportation Co. v.*

*Eichberg et al.,* 109 Md. 211, 71 Atl. 993, 130 Am. St. Rep. 524; *Vencill v. Quincy, etc., R. Co.,* 132 Mo. App. 722, 112 S. W. 1030; *St. L. S. W. R. Co. v. Grayson,* 89 Ark. 154, 115 S. W. 933; *Wallace v. L. S. & M. S. R. Co.,* 133 Mich. 633, 95 N. W. 750; *Ingwersen v. St. L. & H. R. Co.,* 116 Mo. App. 139, 92 S. W. 357; *Banks v. Penn. R. Co.,* 111 Minn. 48, 126 N. W. 410; *Parsons et al. v. Lane,* 97 Minn. 98, 106 N. W. 485, 7 Ann. Cas. 1144; *Hudson & Co. v. N. P. Ry. Co.,* 92 Iowa, 231, 60 N. W. 608, 54 Am. St. Rep. 550. In the latter case it was held that if by his conduct the general freight agent of the carrier induces the shipper to go to the trouble and expense of making out his claim for damage, after the expiration of the time limited, without any objection on that account, and thereby leads him to believe that its presentment would not be insisted upon within the stipulated time, the shipper's failure in that regard cannot be urged as a defense by the carrier. It is true that the plaintiff in the instant case was not induced to file his claim for damages by the conduct of the defendant, but he may very well have been induced by the statements of the claim agent to employ counsel and go to the expense of this litigation, upon the theory that the company would rely as a defense to the action upon the grounds stated in the correspondence, which undoubtedly were the ones upon which the claim was rejected. See, also, *Chicago, R. I. & P. Ry. Co. v. Spears,* 31 Okla. 469, 122 Pac. 228. A great many of the courts cite insurance cases as applicable to cases of this kind, among which may be mentioned *Illinois Cent. R. Co. v. Bogard et al.,* 78 Miss. 11, 27 South. 879; *Lasky v. So. Exp. Co.,* 92 Miss. 268, 45 South. 869; *Bushnell v. Wabash R. Co.,* 118 Mo. App. 618, 94 S. W. 1001. If insurance cases are in point, and we know no reason why they are not, a great many additional authorities might be cited in support of the conclusion reached. One case, however, will be sufficient to illustrate the general trend. In *Northern Assurance Co. v. Grand View Bldg. Ass'n,* 183 U. S. 308, 22 Sup. Ct. 133, 46 L. Ed. 213, the court said:

"The conditions mentioned in the policy could, of course, be waived by the company, either before or after they were broken.

They were inserted for its benefit, and it depended upon its pleasure whether they should be enforced."

It is admitted by counsel for plaintiff in error that any damage which may have accrued by reason of a decline in the market does not fall within the purview of the notice provision of the contract.

The judgment of the court below is reversed, and the cause remanded, with directions to grant a new trial.

TURNER, C. J., and HAYES, WILLIAMS, and DUNN, JJ., concur.