SAMUEL W. HAYES, CHIEF JUSTICE.
MATTHEW J. KANE, VICE CHIEF JUSTICE.
R. L. WILLIAMS,
JESSE J. DUNN,   } JUSTICES.
JOHN B. TURNER,

### MISSOURI, K. & T. RY. CO. v. WALSTON.

No. 1933.  Opinion Filed June 11, 1913.

(133 Pac. 42.)

1. COMMERCE—Exclusive Powers of Congress—Interstate Shipment—Contract Limitation of Liability. The intent of Congress to take possession of the subject of the liability of a carrier under contracts for interstate shipment, and to supersede all state regulations with reference to that subject, so clearly appears from Carmack Amendment, June 29, 1906, c. 3591, sec. 7, 34 St. at L. 593 (U. S. Comp. St. Supp. 1911, p. 1307), to Act Feb. 4, 1887, c. 104, sec. 20, 24 St. at L. 336 (U. S. Comp. St. 1901, p. 3169), as to invalidate, as applied to interstate shipments, the provisions of any state law nullifying contracts limiting the liability of a carrier for loss or damage to the agreed or declared value.

2. CARRIERS—Interstate Shipment—Contract Limitation of Liability—Validity. A stipulation in a carrier's receipt limiting its liability to an agreed or declared value made to adjust the rate is not forbidden by the provision of the Carmack Amendment, June 29, 1906 (Act June 29, 1906, c. 3591, sec. 7, 34 St. at L. 593 [U. S. Comp. St. Supp. 1911, p. 1307]), to Act Feb. 4, 1887, c. 104, sec. 20, 24 St. at L. 386 (U. S. Comp. St. 1901, p. 3169),

that "no contract, receipt, rule, or regulation shall exempt such common carrier, railroad, or transportation company, from the liability hereby imposed."

3.  CONTRACTS—Construction—Presumption—Statutes.    In   cases where the subject-matter of a contract is exclusively one of national cognizance, and Congress has enacted a law for its complete regulation, the parties must be presumed to have contracted with reference to the act of Congress and its effect on the subject-matter, and not with reference to the state law, for they could not, by agreement or otherwise, make any other law the applicatory law in the determination of the nature, validity, or interpretation of the contract.

4.  CARRIERS—Interstate Shipments—Contract Limitation of Liability—Effect. Where there is neither an agreed value, nor a representation of value made in writing by a shipper, and where the bill of lading, executed by the carrier, and signed by the shipper, contains a release valuation to $5 per hundredweight, and which bill of lading is accepted by the shipper, without fraud on the part of the carrier, and subsequently the shipper at point of destination pays the freight, based on the released valuation, no recovery can be had, in the event of loss, beyond that authorized under the bill of lading.

5.  SAME—Where two rates on a given article are. provided, the shipper may elect which of the rates he desires. If no election is made, and the goods are billed out by the carrier at the lower rate, and the bill of lading signed by the shipper so provides and accords with the published and approved tariffs, in the absence of fraud, the shipper is bound by the terms thereof, and, where loss occurs, he cannot insist on another and different liability from that fixed by the bill of lading.

6.  COURTS—Decisions as Authority—State and Federal Courts—Construction of Statutes. Where an act of Congress which governs a contract has been construed by the Supreme Court of the United States, the decision of that court is supreme, and state courts are bound by it.

(Syllabus by Sharp, C.)

*Error from Superior Court, Oklahoma County;*
*A. N. Munden, Judge.*

Action by M. F. Walston against the Missouri, Kansas & Texas Railway Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

*Clifford L. Jackson, ·W. R. Allen,* and *M. D. Green,* for plaintiff in error.

*W. P. Harper,* for defendant in error.

Opinion by SHARP, C. On May 8, 1909, plaintiff below, defendant in error, through the agency of his son, shipped two boxes of household goods and one cook stove crated from St. Charles, Mo., to Oklahoma City, Okla. The weight of the goods shipped, according to the original bill of lading covering the shipment, was 1,025 pounds. The freight rate charged, and afterwards paid at point of destination by the plaintiff, was $1.30 per hundredweight. The two boxes of household goods were never delivered, and plaintiff brought suit to recover their value. On the part of the defendant it was contended that the shipment was made upon a released valuation of $5 per hundredweight, and that in no event would the carrier be liable beyond the value of the shipment, based upon said released valuation. The bill of lading recited that the goods to be shipped were received subject to the classifications and tariffs in effect on the date of the issue of the original bill of lading. In said bill of lading it was provided that:

"The amount of any loss or damage for which any carrier is liable shall be computed on the basis of the value of the property (being the *bona-fide* invoice price, if any, to the consignee, including the freight charges, if prepaid) at the place and time of shipment under this bill of lading, unless a lower value has been represented in writing by the shipper or has been agreed upon or is determined by the classifications or tariffs upon which the rate is based, in any of which events such lower value shall be the maximum amount to govern such computation, whether or not such loss or damage occurs from negligence."

No valuation in fact was represented in writing by the shipper, nor was there any agreement as to the value of the property at the time of the shipment. There was at the time on file in the office of the carrier at St. Charles, Mo., certain approved classifications and tariffs governing interstate shipments of the character in question, from which it appears that St. Charles was situated in what was known as St. Louis territory, and that the first-class rate on freight shipments from St. Louis territory to Oklahoma City was $1.30 per hundredweight, or the exact rate inserted in the bill of lading by the

carrier's agent at point of shipment. It further appears that, under the tariffs then in force, two rates on household goods were provided. In addition to the one we have mentioned, the second provided a rate of 1½ or $1.95 per hundredweight, where there was no release of valuation by the shipper. The rate charged plaintiff, and by him paid, was that properly chargeable under the tariffs in case of released valuation.

Neither the law of Missouri, the point of shipment, nor the law of Oklahoma, the place of destination, furnishes the law by which to determine the carrier's liability. The law controlling the respective rights of the shipper and carrier is that enacted by Congress regulating interstate commerce upon which Congress pursuant to its constitutional authority, after long delay, has assumed jurisdiction. See Act June 29, 1906, 3591, 34 St. at L. 584 (U. S. Comp. St. Supp. 1911, p. 1288), being an act to amend the Interstate Commerce Act of 1887 (Act Feb. 4, 1887, c. 104, 24 St. at L. 379 [U. S. Comp. St. 1901, p. 3154]). On account of the passage of the amendatory act above mentioned, the state, under its police power, has ceased to have the authority to legislate concerning contracts made by carriers pertaining to interstate shipments. *St. Louis & S. F. R. Co. v. Bilby,* 35 Okla. 589, 130 Pac. 1089. See, also, *Adams Express Co. v. Croninger,* 226 U. S. 491, 33 Sup. Ct. 148, 57 L. Ed. —; *Chicago, St. P. M. & O. Ry. Co. v. Latta,* 226 U. S. 519, 33 Sup. Ct. 155, 57 L. Ed. —; *Chicago, B. & Q. Ry. Co. v. Miller,* 226 U. S. 513, 33 Sup. Ct. 155, 57 L. Ed. —; *Kansas City S. R. Co. v. Carl,* 227 U. S. 639, 33 Sup. Ct. 391, 57 L. Ed. —; *Missouri, K. & T. Ry. Co. v. Harriman Bros.,* 227 U. S. 657, 33 Sup. Ct. 397, 57 L. Ed. —, all being cases decided during the present year by the Supreme Court of the United States, construing at length the provisions of the foregoing acts of Congress.

We must therefore recognize that, where an act of Congress which governs a contract has been construed by the Supreme Court of the United States, the decision of that court is supreme, and the courts of this state are bound by it. *Southern*

*Ry. Co. v. Harrison,* 119 Ala. 539, 24 South. 552, 43 L. R. A. 385, 72 Am. St. Rep. 936. In *Adams Express Co. v. Croninger, supra,* the manifest intent of Congress to take possession of the subject of the liability of a carrier under contracts for interstate shipment, and to supersede the state regulations with reference to that subject, is announced, and the conclusions are supported by much authority.

The freight rate covering the shipment in question was that approved by the Interstate Commerce Commission, and was based upon a release of the carrier from liability for any loss or damage the property might sustain in excess of $5 per hundred pounds. This contract, limiting the liability of the carrier, is not forbidden by the provision of the Carmack Amendment of June 29, 1906, to Act February 4, 1887, sec. 20, and was therefore the legitimate subject-matter of contract. Keeping in mind that the tariff sheets filed with the commission and with the carrier at point of shipment showed two rates on household goods, a lower rate when released to $5 per hundredweight, and a higher rate when not so released, and the further fact that the rate indorsed on the bill of lading and paid by the shipper was the lower rate so prescribed by the rate sheets, we cannot escape the conclusion that the shipper, as well as the carrier, is bound thereby. We may here say, as it was said in *Kansas City S. R. Co. v. Carl, supra*:

"In the light of the published tariffs and of the rate applied to this shipment, the two papers, read together, plainly mean that the household goods included in the two boxes and one barrel were valued, for the purpose of coming under the lower rate at $5 per hundred."

Neither is the question of the carrier's liability affected by the fact that the plaintiff had no actual knowledge of either the existence or contents of the tariffs and classifications at the time in force. He was charged with knowledge of the lawful rate. As was said in the Carl case:

"The defendant in error must be persumed to have known that he was obtaining a rate based upon a valuation of $5 per hundredweight, as provided by the published tariff. This valu-

ation was conclusive, and no evidence tending to show an under-valuation was admissible."

In the same case it was further said in this connection:

"The valuation the shipper declares determines the legal rate where there are two rates based upon valuation. He must take notice of the rate applicable, and actual want of knowledge is no excuse. * * * When there are two published rates, based upon difference in value, the legal rate automatically attaches itself to the declared or agreed value. Neither the intentional nor accidental misstatement of the applicable published rate will bind the carrier or shipper. The lawful rate is that which the carrier must exact, and that which the shipper must pay. The shipper's knowledge of the lawful rate is conclusively presumed, and the carrier may not be required to surrender the goods carried upon the payment of the rate paid, if that was less than the lawful rate, until the full legal rate has been paid."

In *Missouri, K. & T. Ry. Co. v. Harriman Bros., supra,* it was said:

"In any event the rate sheets do provide for a choice between two rates, one with and one without a declared valuation. In one case the carrier is liable for whatever loss or damage the shipper sustains, and in the other its liability is limited to the valuation upon which the rate was based. The ground upon which the shipper is limited to the valuation declared is that of estoppel, and presupposes the valuation to be one made for the purpose of applying the lower of two rates based upon the value of the cattle."

Thus it is clear that if the shipper's knowledge of the lawful rate is to be conclusively presumed, and a shipment containing the lower rate, with released valuation, is made and acquiesced in by the shipper, who afterwards upon presentation of the freight bill at the point of destination pays the freight, based on the lower charge, though without knowledge of the legal effect either of the acceptance of the bill of lading or the payment of the freight charges, no recovery can be had beyond that authorized by the tariffs and included in the bill of lading. Neither the carrier nor the shipper has aught to do with fixing the rates. *Georgia R. Co. v. Creety,* 5 Ga. App. 424, 63 S. E. 528. The shipper can elect which of the two rates he desires.

If no election is made, and the goods are billed out by the carrier at the lower rate, the shipper, in the absence of fraud, and particularly where without objection the lower rate of freight was afterwards paid, is bound by the terms thereof. If by his passive conduct he elects to take advantage of the lower rate, he cannot then insist upon another and different liability on the part of the carrier. Plaintiff's right to recover cannot extend beyond the released valuation of the goods lost, and the freight paid thereon, and the judgment of the court allowing a recovery based upon actual valuation cannot be upheld.

The judgment of the lower court should be reversed, and the cause remanded for a new trial.

By the Court: It is so ordered.