# ST. LOUIS & S. F. R. R. CO. v. TALIAFERRO.

No. 5743.    Opinion Filed March 21, 1916.

(156 Pac. 359.)

1. **CARRIERS—Carriage of Live Stock—Limitation of Liability—Validity.** Where, in an action against a carrier for negligent delay in an interstate shipment of live stock, it is shown that the shipment was under a special written contract, signed by the shipper and based upon a reduced rate, made in consequence of the terms of such contract, and that such rate had been published and filed with the Interstate Commerce Commission, in accordance with the federal laws and the regulations of such commission, **held**, that in the absence of proof of such fraud, oppression, attempted rebating, or unlawful billing as would avoid the contract, the terms of such contract governed the liability of the carrier, and that the failure by the shipper to comply with certain provisions thereof set out in this opinion, and heretofore held valid by this court, where such provisions are not shown to be unreasonable in the particular case, will avoid the liability of the carrier.

2. **SAME.** Where a carrier has properly made, published, and filed with the Interstate Commerce Commission two rates for the shipment of live stock, one based upon the execution of a special contract referred to in the rate sheet so filed, and a second higher rate based upon the unrestricted liability of the carrier, **held**, that a shipper is charged with knowledge of the existence of the two rates, and that he has a right to exercise his option as to which rate he will pay, and under which liability of the carrier he will ship.

3. **SAME.** The facts of this case examined, and **held**, that no such circumstances of fraud or oppression are shown as will relieve the shipper from compliance with the terms of the special contract under which he shipped.

(Syllabus by Burford, C.)

*Error from District Court, Marshall County;*
*Jesse M. Hatchett, Judge.*

Action by D. B. Taliaferro against the St. Louis & San Francisco Railroad Company. Judgment for plain-

tiff, and defendant brings error. Reversed, with directions to dismiss.

*R. A. Kleinschmidt* and *Fred E. Suits,* for plaintiff in error.

*E. E. Kennamer,* for defendant in error.

Opinion by BURFORD, C. This was an action brought by D. B. Taliaferro against the St. Louis & San Francisco Railroad Company to recover damages for an alleged common-law liability for negligence in failing to transport certain live stock to market within a reasonable time. The shipment was interstate. The defendant answered, denying the negligence, and further pleaded that the shipment was made under and by virtue of certain live stock contracts, which were form No. 1134, and which contained, among other things, the following provision:

"(13) As a condition precedent to recovery of damages for any death, loss, injury, or delay of the live stock, the shipper shall give notice, in writing, of his claim, to some general officer of the company, or the nearest station agent, or the agent at destination, and before the live stock is mingled with other live stock, and within one day after its delivery at destination, so that the claim may be promptly and fully investigated, and a failure to comply with this condition shall be a bar to the recovery of any damages for such death, loss, injury or delay."

"(16) No suit or action for the recovery of any claim for damages for death, loss, injury, or delay of this live stock shall be sustainable, unless begun within six months next after the cause of action shall accrue, and if begun later, the lapse of time shall be conclusive evidence against the validity of such claim, any statute of limitation to the contrary notwithstanding."

It was alleged that there had been no compliance with either of these provisions of the contract. Defendant fur-

ther alleged that it had two rates on live stock, one of which was based upon shipments under special contract, and the other—a higher rate—upon shipment at carrier's risk, and that these rates were properly and duly published and filed with the Interstate Commerce Commission. The plaintiff replied, alleging that he was given no option, at the time of shipping the cattle, as to what rate he would pay or as to signing the special contract; that he did not have time or opportunity to read the contract; that he was not advised by the railroad company or its agent that there was any different contract made, or rate which he could pay; and that the provisions in regard to giving notice and bringing suit contained in said contract were unreasonable. Upon these pleadings a trial was had to a jury and a verdict returned for the plaintiff. There was a demurrer to the plaintiff's evidence, and a motion for an instructed verdict, both of which were overruled and exceptions taken.

As to the validity of the two clauses of the contract above set out as to interstate shipments, there is no longer any question. *St. L. & S. F. R. Co. v. Bilby,* 35 Okla. 589, 130 Pac. 1089; *St. L. & S. F. R. Co. v. Zickafoose,* 39 Okla. 302, 135 Pac. 406; *M., K. & T. R. Co. v. Watson,* 37 Okla. 517, 133 Pac. 42; *St. L. & S. F. R. Co. v. Pickens,* 51 Okla. 455, 151 Pac. 1055; *Adams Express Co. v. Croninger,* 226 U. S. 491, 33 Sup. Ct. 148, 57 L. Ed. 314, 44 L. R. A. (N. S.) 257; *St. L. & S. F. R. Co. v. Cake,* 25 Okla. 227, 105 Pac. 322; *C., R. I. & P. R. Co. v. Conway,* 34 Okla. 356, 125 Pac. 1110; *St. L. & S. F. R. Co. v. Ladd,* 33 Okla. 160, 124 Pac. 461. It is equally well settled that whatever manner or form of action the plaintiff may bring upon an interstate shipment, if it be pleaded and proved

that he entered into a special contract, in the absence of fraud or oppression upon the part of the carrier, or an attempt at rebating or unlawful billing, sufficient to avoid the contract, both parties will be bound by its terms. *Kansas City Southern R. Co. v. Carl*, 227 U. S. 639, 33 Sup. Ct. 391, 57 L. Ed. 683; *A., T. & S. F. R. Co. v. Robinson*, 233 U. S. 173, 34 Sup. Ct. 556, 58 L. Ed. 901; *St. L. & S. F. R. Co. v. Ladd*, 33 Okla. 162, 124 Pac. 461; *M., K. & T. R. Co. v. Walston*, 37 Okla. 517, 133 Pac. 42, and cases cited. *St. L. & S. F. R. Co. v. Peery*, 40 Okla. 432, 138 Pac. 1027, did not go further than to hold that a common-law liability may be enforced where there was no question that there had not been a violation of such provisions of the special contract as had been held valid.

There was no question at the trial that plaintiff had failed to comply with the terms of the special contract. There was absolutely no evidence that the conditions thereof were unreasonable in the particular case, which might have carried that question to the jury. *St. L. & S. F. R. Co. v. Phillips*, 17 Okla. 264, 87 Pac. 470. In fact the evidence showed that the defendant maintained an office at the National Stockyards, Illinois, where these cattle were delivered, for the very purpose of investigating these claims; that the cattle were delivered there about two o'clock one afternoon and were sold the following morning, without notice being given to the carrier or any opportunity for it to inspect the cattle and ascertain whether or not there had been such shrinkage of flesh as was afterwards claimed by the plaintiff. It is insisted, however, that the effect of these provisions is avoided by pleading that the plaintiff was given no opportunity to select any other rate. The evidence of the plaintiff him-

self, which was the strongest offered in his behalf, was to the effect that he simply went to the office of the agent of the railroad company, was offered these contracts, and that he signed them; that the agent did not explain to him that there were two rates on live stock, and that he did not know it; that he did not read the contract and did not know what it contained; that he made no protest in regard to it. He was amply able to read and write. He testified that he had been shipping cattle for 25 years, and that he always signed contracts or bills of lading covering such shipments. Among other things, he was asked these questions:

"Q. You have read this contract have you? A. I don't remember ever reading one of them. Q. You know, of course, about what they contain? A. Well, I can't tell you to save my life what is in one of them; I never paid any attention to that; that's all there is to sign; called in to sign a contract and usually do it."

The contract which the plaintiff signed, and which was introduced in evidence, had printed across it in large, black letters, the following:

"Read this contract carefully. Notice. This company has two rates on live stock.

"The rate charged for shipment of live stock under the following contract is lower than the rate charged if the shipment is not made under the following contract, but at carrier's risk. The rates of freight are based upon the nature and extent of liability assumed by the carrier. The shipper has the right of election whether to ship live stock under this contract at the lower rate, or not under this contract, but at the carrier's risk, at a higher rate."

The evidence on behalf of the defendant showed conclusively, and without dispute, that the rates covering shipments of live stock such as this were properly filed

with the Interstate Commerce Commission, and were published as required by law. The tariff contained a notation to the effect that if contracts were made under this special form, No. 1134, the rate should be a certain sum, whereas, if cattle were shipped not under the contract, but at carrier's risk, the rate should be 110 per cent. of that fixed for carriage under the contract. Under this testimony it is clear that there was no competent evidence which in any way would tend to support the verdict of the jury. Noncompliance with the contract being admitted, and its execution being likewise admitted, the circumstances detailed by the plaintiff did not excuse him from the performance of the contract. In the first place, he is charged by law with knowledge of the fact that there were two rates on live stock. This came from the proper publication of the rate and the notation above referred to, and its being filed with the Interstate Commerce Commission.

In *A., T. & S. F. R. Co. v. Robinson*, 233 U. S. 180, 34 Sup. Ct. 558, 58 L. Ed. 901, the Supreme Court of the United States said:

"We regard these cases as settling the proposition that the shipper as well as the carrier is bound to take notice of the filed tariff rates and that so long as they remain operative they are conclusive as to the rights of the parties, in the absence of facts or circumstances showing an attempt at rebating or false billing. *Great Northern R. Co. v. O'Connor*, 232 U. S. 508 [34 Sup. Ct. 380, 58 L. Ed. 703]."

In that case recovery was sought upon an alleged oral contract which did not contain the terms of the special contract. The court further said:

"The Supreme Court of the state in this case affirmed the instruction of the trial court upon which the case was given to the jury and held that the oral contract was binding, unless it was affirmatively shown that the written agreement, based upon the filed schedules, was brought to the knowledge of the shipper and its terms assented to by him. This ruling ignored the terms of shipment set forth in the schedules and permitted a recovery upon the contract made in violation thereof in a case where there was no proof that there was an attempt to violate the published rates by a fraudulent agreement showing rebating or false billing of the property, and no circumstances which would take the case out of the rulings heretofore made by this court as to the binding effect of such filed schedules and the duty of the shipper to take notice of the terms of such rates and the obligation to be bound thereby, in the absence of the exceptional circumstances to which we have referred."

In *Kansas City Southern R. Co. v. Carl*, 227 U. S. 639, 33 Sup. Ct. 391, 57 L. Ed. 683, a case involving two rates based upon declared value, the Supreme Court of the United States said:

"He must take notice of the rate applicable, and actual want of knowledge is no excuse. The rate, when made out and filed, is notice, and its effect is not lost, although it is not actually posted in the station. *Texas & Pacific Ry. Co. v. Mugg*, 202 U. S. 242 [26 Sup. Ct. 628, 50 L. Ed. 1011]; *Chicago & Alton Railway v. Kirby*, 225 U. S. 155 [32 Sup. Ct. 648, 56 L. Ed. 1033, Ann. Cas. 1914A, 501]. It would open a wide door to fraud and destroy the uniform operation of the published tariff rate sheets. When there are two published rates, based upon difference in value, the legal rate automatically attaches itself to the declared or agreed value. Neither the intentional nor accidental misstatement of the applicable published rate will bind the carrier or shipper. The lawful rate is that which the carrier must exact and that which

the shipper must pay. The shipper's knowledge of the lawful rate is conclusively presumed, and the carrier may not be required to surrender the goods carried upon the payment of the rate paid, if that was less than the lawful rate, until the full legal rate has been paid."

If the shipper be charged with knowledge that there are two rates upon declared valuation, he must likewise be charged with knowledge that there are two rates based upon different forms of contract provided for the shipment of live stock.

In *M., K. & T. R. Co. v. Walston*, 37 Okla. 517, 133 Pac. 42, this court said:

"Neither is the question of the carrier's liability affected by the fact that the plaintiff had no actual knowledge of either the existence or contents of the tariffs and classifications at the time in force. He was charged with knowledge of the lawful rate. * * * The shipper can elect which of the two rates he desires. If no election is made, and the goods are billed out by the carrier at the lower rate, the shipper, in the absence of fraud, and particularly where without objection the lower rate of freight was afterwards paid, is bound by the terms thereof. If by his passive conduct he elects to take advantage of the lower rate, he cannot then insist upon another and different liability on the part of the carrier."

Without further citation of authority it will be seen to be apparent that the shipper is just as conclusively charged with knowledge of the contents of the tariff as is the carrier, and just as much bound thereby. It cannot be said to be the duty of the carrier to enlighten him as to the rates, when he is as much presumed to know them as is the carrier. Nor was there any evidence in this case to justify the conclusion that the contracts were signed under such circumstances of fraud and oppression

as would render them *nudum pactum*, and enable plaintiff
to enforce a liability of the carrier for negligence without
reference to the terms of the contract.   That there might
be circumstances, such as a refusal of the carrier to allow
the shipper any choice as to rates, or fraudulent or deceit-
ful conduct on the part of the carrier, which would avoid
the contract, is apparent.   *Toledo, St. L. & Western R.
Co. v. Milner* (Ind. App.) 110 N. E. 756, is a case of this
sort.   See, also, *Kansas Pac. R. Co. v. Reynolds,* 17 Kan.
251; *A., T. & S. F. R. Co. v. Dill,* 48 Kan. 210, 29 Pac.
148; *St. L. & S. F. R. Co. v. Gorman,* 79 Kan. 643, 100
Pac. 647, 28 L. R. A. (N. S.) 637, and cases cited.   But
there is no competent evidence of any kind in this case
to support a conclusion that the contract was entered into
under such circumstances of fraud and oppression as would
avoid compliance with its terms.   *St. L. & S. F. R. Co. v.
Ladd,* 33 Okla. 162, 124 Pac. 462, was very similar to this
case upon the facts, and is controlling as to the rule of
law applicable.   In that case this court said:

"It is admitted that plaintiff signed the special con-
tract, but he contends that he did so under such circum-
stances as not to charge him with knowledge of its con-
tents, and that he did not have an opportunity to exercise
the option of choosing the rate under which he desired to
ship.   It seems that the cattle were loaded just a few
moments before the departure of the train on which they
were to be transported; that, immediately after they were
loaded and before the shipper had time to get his bill of
lading or sign his contract, the train crew commenced the
necessary switching operations to transfer the loaded stock
cars from the place they were loaded to their proper place
in the train which was to carry them to their destination;
that while this was going on the shipper went to the sta-
tion agent, and signed the special contract referred to
without reading it; that he made no inquiry whether or

not the company had two rates, and the agent (of the company) did not tell him that there were two rates, nor read the contract to him, nor call his particular attention to the conditions contained therein. It is also admitted that the cattle were on the road longer than the time usually necessary to transport them from Tuttle, Oklahoma, to Kansas City, Missouri, and that on their arrival at the market in Kansas City the cattle were considerably shrunken in flesh.

"The rule seems to be well settled that a shipper of live stock cannot, in the absence of fraud by the carrier, avoid limitations of the carrier's liability contained in the bill of lading or shipping contract by showing that he executed the contract hurriedly, or without due care, or that he was ignorant of its contents or failed to read the same (citing cases). 'As has been said by one court,' says Elliott in h's work on Railroads (Vol. 4, sec. 1502a), 'it would tend to disturb the force of all contracts if one in possession of ordinary capacity and intelligence were allowed to sign a contract and act under it in the enjoyment of all its advantages, and then to repudiate it upon the ground that its terms were not brought to his attention. In the absence of all fraud, misrepresentations, or mistakes, it must be presumed that he read the contract, and assented to its provisions.' "

Under the doctrine of these authorities, there being no competent evidence at all which would support a conclusion relieving the plaintiff from compliance with the terms of the special contract, and it being shown without contradiction that he did not comply with the terms thereof, and the special contract being in evidence, and its execution admitted, it is clear that there was no competent evidence to support the verdict of the jury in favor of the plaintiff. It is likewise apparent that a new trial under the facts of this case, as developed in the record, could

not result in anything but a verdict and judgment for the defendant.

The order heretofore made in this case reversing the same for failure to file briefs by the defendant in error is set aside, and the cause reversed, with directions to the trial court to dismiss the cause.

By the Court:  It is so ordered.