**ATCHISON, T. & S. F. RY. CO. v. COZART.**

No. 7405—Opinion Filed June 13, 1916.

(158 Pac. 933.)

**Carriers—Carriage of Goods—Limitation of Liability—Validity.**

A provision in a bill of lading issued by a common carrier in 1912 covering an interstate shipment of grain, providing that claim for any loss incurred must be filed within four months after the delivery of the shipment. or in case of failure to deliver within four months after a reasonable time for such delivery, if fairly entered into by the carrier and the shipper, and not unjust or unreasonable under the circumstances of the particular case, is valid; and a failure to comply therewith on the part of the shipper, when such provision of the contract is properly pleaded and not waived by the carrier, bars a recovery.

(Syllabus by Burford, C.)

Error from District Court, Woodward County; James B. Cullison, Judge.

Action by C. B. Cozart against the Atchison, Topeka & Santa Fe Railway Company. Judgment for plaintiff. and defendant appeals. Reversed, with directions to enter judgment for defendant.

Cottingham & Hayes, Chas. H. Woods, and Geo. M. Green, for plaintiff in error.

S. B. Lanue, for defendant in error.

Opinion by BURFORD, C.  This was an action instituted in the district court of Woodward county by C. B. Cozart to recover for the loss of certain grain.  It appeared from the testimony· that Farmers' Grain & Supply Company had shipped a carload of grain to its own order at Oklahoma City, and had assigned the bill of lading to the plaintiff.  Desiring to reship the grain and to receive the benefit of a "milling in transit" rate, plaintiff caused the grain to be unloaded by the Acme Mill & Elevator Company, at Oklahoma City, and again reloaded and reshipped to Galveston, Texas.  Upon being unloaded at Galveston, it was shown that the car contained several thousand pounds of wheat less than was in the car both at Woodward and at Oklahoma City.  Action was brought for the value of the wheat so lost. As a defense, the carrier pleaded that the shipment was an interstate one and moved under certain bills of lading which were set up.  The pertinent provisions of the bill of lading are as follows:

"It is mutually agreed, as to each carrier of all or any of said property over all or any portion of said route to 'destination, and as to each party at any time interested in all or any of said property, that every service to be performed hereunder shall be subject to all the conditions, whether printed or written, herein contained (including conditions on back hereof), and which are agreed to by the shipper and accepted for himself and his assigns."

And also the following:

"Claims for loss, damage, or delay must be made in writing to the carrier at the point of delivery or at the point of origin within four months after delivery of the property, or, in case of failure to make delivery, then within four months after a reasonable time for delivery has elapsed.  Unless claims are so made the carrier shall not be liable."

To avoid the effect of these provisions of the bills of lading, the shipper in his reply set up, first, that a proof of claim had been filed within four months after a reasonable time for the delivery of the grain, and, second, that he had been prevented from filing his claim in time by the failure of the railway company to give him information regarding the loss.  Upon the trial it appeared, without any serious contradiction, that no proof of claim had ever been filed with the agent of either of the carriers, either at Woodward, Oklahoma City, or Galveston; that the delivery of the car was made at Galveston on February 1st; that on June 17th, thereafter, a claim was forwarded to the general agent of the defendant company

at Hutchinson, Kan.  It was apparently assumed that this claim had been received in due course of mail, although there was no direct proof of that fact.  The evidence further established that the plaintiff had made some inquiry in regard to whether or not the wheat had been weighed in transit; but it clearly appeared from the evidence that, very shortly after the receipt of the shipment at Galveston, the plaintiff had in his possession a record of the weight of the wheat as loaded by the Acme Milling Company at Oklahoma City, and the record of the amount of wheat delivered at Galveston.  Under these circumstances the plaintiff in error contends that the defendant cannot recover.

There are numerous assignments of error upon the instructions of the trial court and upon other questions, but, if the contention of the plaintiff in error as to the ultimate right of the plaintiff to recover at all be correct, it is unnecessary to consider any other questions.

It must be held that the stipulations of the contract above set out are valid and enforceable.  As early as Express Co. v. Caldwell, 21 Wall. 264, 22 L. Ed. 556, the Supreme Court of the United States said:

"A common carrier is always responsible for his negligence, no matter what his stipulations may be.  But an agreement that, in case of failure by the carrier to deliver the goods, a claim shall be made by the bailor or by the consignee, within a specified period, if that period be a reasonable one, is altogether of a different character.  It contravenes no public policy; it excuses no negligence.  It is perfectly consistent with holding the carrier to the fullest measure of good faith, of diligence, and of capacity, which the strictest rules of the common law ever required."

The doctrine of this case has been consistently followed by the Supreme Court of the United States.  In M., K. & T. R. Co. v. Harriman, 227 U. S. 657, 33 Sup. Ct. 397, 57 L. Ed. 690, the Supreme Court of the United States was considering a stipulation of an interstate bill of lading, limiting the time within which an action might be brought. It was there said, speaking of the effect of the Carmack Amendment (Act June 29, 1906, c. 3591, sec. 7, 34 Stat. 593 [U. S. Comp. St. 1913, sec. 8592]) to the Interstate Commerce Act (Act Feb. 4, 1887, c. 104, sec. 20, 24 Stat. 383), with relation to this provision:

."The liability imposed by the Carmack Amendment is that of the common law, and it may be limited or qualified by a special contract with the shipper limiting it in a just and reasonable manner except exemption from loss or responsibility due to negligence."

And in Adams Express Co. v. Croninger, 226 U. S. 491, at page 508, 33 Sup. Ct. 148, at

page 153 (57 L. Ed. 314), it was said of the liability of a carrier:

· "The rule of the common law did not limit his liability to loss and damage due to his own negligence, or that of his servants. That rule went beyond this, and he was liable for any loss or damage which resulted from human agency, or any cause not the act of God or the public enemy. But the rigor of this liability might be modified through any fair, reasonable, and just agreement with the shipper, which did not include exemption against the negligence of the carrier or his servants."

In England, a stipulation of a bill of lading requiring claim for damage to be made within three days after the delivery of the goods, and claim for loss within seven days after the goods should have been delivered, has been sustained as lawful and reasonable. Lewis v. Great Western Ry. Co., 5 Hurlstone & Norman, 867. Similar provisions to the one under discussion, as related to interstate commerce, have been consistently sustained by this court. St. L. & S. F. R. Co. v. Phillips, 17 Okla. 267, 87 Pac. 470; M., K. & T. R. Co. v. Hancock, 26 Okla. 254, 109 Pac. 220; M., K. & T. R. Co. v. Hancock & Goodbar, 26 Okla. 265, 109 Pac. 223; St. L. & S. F. R. Co. v. Zickafoose, 39 Okla. 302; St. L. & S. F. R. Co. v. Pickens, 51 Okla. 455, 151 Pac. 1055; C., R. I. & P. Co. v. Bruce, 50 Okla. 667, 150 Pac. 880, and cases cited.

If it be conceded, for the sake of the argument, that the claim made out by the plaintiff was received by the general agent of the defendant, and that its receipt by him was a fair compliance with the provisions of the contract requiring claim to be made to the carrier at point of origin or destination, still we think there was no evidence to support the contention that the claim was filed within four months after a reasonable time for the delivery of the goods. The shipment was all made in one car. When that car arrived it was apparent that there was a loss. It certainly was not in the contemplation of either of the parties that a subsequent shipment would come along containing the remainder of the wheat which had been originally shipped in one car. There is no fairness, then, in the contention that plaintiff was entitled to wait a reasonable time after the actual receipt of the car to see whether or not the remainder arrived. Joseph v. C. B. & Q. R. Co., 175 Mo. App. 18, 157 S. W. 837. Even if that contention could be conceded, there is no evidence in this record to show that 17 days was a reasonable time to wait for the arrival of the shipment from Oklahoma City to Galveston, after the arrival of the car at Galveston which originally con-. tained the shipment, and which had already

been on the road a period of six days, which six days, curiously enough, defendant in error contends in his brief was an unreasonable time for the delivery at Galveston. Nor are any special circumstances shown which could justify the contention that the four-months period, given by the bill of lading for filing the claim, was unreasonable.

Waiving the question of whether or not there was any duty on the part of the railway company to furnish the plaintiff with information upon which to base his claim against it, it clearly appears that he had all the information necessary to file the claim, within a short time after the delivery of the car. Whether or not the railway company weighed the car en route could have no effect upon the plaintiff's right or the defendant's liability. If there was any liability by reason of the act of any of the connecting carriers, the initial carrier, under the provisions of the Carmack Amendment, was responsible to the plaintiff for such liability. There could be no good reason, therefore, for him requiring the weights in transit, which could only be for the purpose of fixing the point at which the loss occurred. Nor was there anything to show that the contract was not fairly entered into. It is true that there was testimony on behalf of the plaintiff that the conditions of the bill of lading were not read by, or called to the attention of, the shipper before it was signed, but it was established without contradiction that the shipper had pads of these bills of lading in his own possession; that as a general rule he made out the bill of lading himself, taking it to the agent to be signed, and that to the best of his recollection that was the course of procedure in the instant case. No circumstances of fraud or oppression on behalf of the railway company were shown. The fact that he did not read the bill of lading, when he had ample opportunity to do so, could not excuse him. St. L. & S. F. R. Co. v. Ladd, 33 Okla. 162, 124 Pac. 461; St. L. & S. F. R. Co. v. Taliaferro, 56 Okla. 519, 156 Pac. 359.

Upon the undisputed evidence in the case (and it might here be noted that all the testimony offered was on behalf of the plaintiff, the defendant having offered none), we are of the opinion that the stipulation above set out in the bill of lading was valid and binding on the plaintiff; that under the circumstances of this case it was reasonable; that it was not complied with, and that no such circumstances of fraud or oppression on behalf of the railway company were shown as to avoid its effect; and that therefore, having failed to comply with its provisions, the plaintiff could not recover. He is in the same unfortunate position as one whose claim is

barred by the statute of limitations; he has had a right to recover which he has lost by his own laches. This is his own fault and not that of the law.

The judgment of the trial court should be reversed, with directions to enter judgment for the defendant.

By the Court: It is so ordered.